[No. 34791. Department One. February 26, 1959.]

JUDY KIDWELL, *a Minor, by James Keys, her Guardian ad Litem, Respondent,* v. SCHOOL DISTRICT No. 300, WHITMAN COUNTY, *Appellant.*[1]

[1] Reported in 335 P. (2d) 805.

MALLERY, J., dissents.

*Del Cary Smith & Del Cary Smith, Jr.*, and *D. L. McMannis*, for appellant.

*James D. McMannis* and *Ellsworth I. Connelly*, for respondent.

HILL, J.—Judy Kidwell (a nine-year-old girl), hereinafter called the plaintiff, was painfully and permanently injured in a classroom of the Colfax elementary school when an upright piano tipped over. The accident occurred after regular school hours, while she was attending a meeting of the Bluebirds, a younger age group of the Campfire girls. The Bluebird group, directed by an adult supervisor (not a teacher), used the classroom after school hours for its weekly meeting by permission of the school authorities.

The plaintiff, through her stepfather and guardian *ad litem*, brought an action against the school district, and recovered a verdict of $23,372.45. From the judgment entered thereon, the school district has appealed. The serious question presented concerns the sufficiency of the evidence to support the verdict.

█ School facilities are provided for the use of large numbers of children. It is the duty of the school district to use reasonable care in order that the school premises and facilities be safe for the use of these children. *Howard v. Tacoma School Dist. No. 10* (1915), 88 Wash. 167, 152 Pac. 1004; *Holt v. School Dist. No. 71* (1918), 102 Wash. 442, 173 Pac. 335. We are not here concerned with the school district's duty to supervise its young charges: See *Briscoe v. School Dist. No. 123* (1949), 32 Wn. (2d) 353, 201 P. (2d) 697.

It is the school district's position that the plaintiff in this case should be considered to be merely a licensee in the school room at the time of her after-school meeting, and that the school district should, therefore, not be liable for her injury unless its action had wantonly or recklessly inflicted such injury upon her. The question of whether the minor plaintiff in a suit such as this one is an invitee or a licensee upon the school premises has not been discussed in previous Washington decisions. This court has, however, assumed such a minor plaintiff to hold the status of invitee, and has applied the test of reasonable care, in past decisions, to determine the school districts' liability for injuries due to allegedly unsafe conditions on their premises. See *Howard v. Tacoma School Dist. No. 10, supra; Holt v. School Dist. No. 71, supra.*

█ In the instant case, the child was certainly an invitee when she came to school. The school district designates no time when her status changed. The school district permitted its school room to be put to use for an extracurricular activity, approved as being educational in character, immediately following the close of school. This was an invitation to those granted that use to remain upon the premises. The duty upon the school district, therefore, was to use reasonable care to keep the premises safe, not only as to the children who occupied it during school hours, but also to those who would use it by such invitation. See *Kelly v. Board of Education of City of New York* (1920), 191 App. Div. 251, 180 N. Y. S. 796.

The plaintiff's theory of negligence was that the particular piano which tipped over, causing the injury, was so inherently dangerous that the school district should have foreseen and anticipated danger from it. The piano was sixty-three years old; made by Sohmer & Company of New York city; weighed six to seven hundred pounds; and was top-heavy to the same extent as all other upright pianos because its center of gravity was near the back.

It was testified that such a piano could quite easily tip over backwards, should it be pushed by the keyboard in the process of being moved. The school district had replaced the piano's original casters with larger casters to make it easier to move the piano from room to room, and to move it about in any room. A piano dealer, called as a witness by the district, testified, "The taller the caster the easier it is to tip the piano over."

Shortly after the accident, angle irons—extending back about a foot and a half from the piano—were attached to the bottom of the piano on either end, giving greater stability to the piano. This evidence was received as proof that further measures, taken before the accident, could have made the piano safer for school room use, but not as proof of negligence.

The same witness testified that high, upright pianos, such as this one, were intended to stand with their backs placed against the wall for the reason that:

". . . the weight being in the back, any slight pressure, undue pressure, will start it to tip back. It takes much more strength to bring up the other side of the piano in proportion to the front and it naturally will tip back because the weight is at the top and the entire construction is in the back, so physically it would have to go backward."

This particular piano had been left in exactly the reverse position. The back of the piano faced the center of the room while the keyboard was so close to the wall that the small girls could just squeeze between the keyboard and the wall. If the piano were to be moved so that anyone could play upon it, it had to be either pushed from the front or pulled

from the back, or both, with the risk that too great a push or pull could make the piano tip over backwards.

The adult supervisor was present at the Bluebird meeting, but the testimony is conflicting as to whether she told the little girls to move the piano, or whether she told them to leave it alone. It does appear, however, that one girl intended to play the piano, and that several of them, including the plaintiff, undertook to move it away from the wall with the result that the piano tipped over backwards, falling on the plaintiff's foot. A substantial portion of the foot had to be amputated.

▮ This school room was used as an activities room, and it should have been foreseeable that some child or group of children would want to use the piano, and would try to move it, if necessary, for that purpose.

The school district introduced evidence that Sohmer & Company had manufactured forty-five thousand upright pianos, and that this was the first reported instance of anyone having been injured by one of them tipping over. This particular piano had been in the Colfax schools for at least fifteen years without any untoward occurrence, except that a school custodian gave some indefinite and hearsay testimony about someone having reported to him some years before that some piano (and it might have been this one) had tipped back against a blackboard. He did not see it tipped against the blackboard, but he saw where something heavy had tipped against the blackboard; he reported this happening to the classroom teacher, but not to the principal of the school.

▮ There is no testimony that this particular model piano was more dangerous than any other upright piano. While increasing the height of the casters made it somewhat easier to tip the piano over, basically the verdict and judgment must rest upon the proposition now approved by a majority of this court: that since an upright piano is easily turned over backwards, reasonable minds are entitled to conclude that anyone who leaves an upright piano in a position where it may be turned over and where it is foreseeable that small children will endeavor to move it, is negligent,

and damages may be recovered for any injuries of which such negligence is the proximate cause.

Having determined that there is sufficient evidence to sustain the verdict, we turn to the assignments of error based upon instructions given or refused.

The trial court, by its instructions, presented the question of whether Judy Kidwell was an invitee or a licensee as a question of fact for the jury to decide. The trial court then gave instructions concerning the school district's liability for negligence in failing to use reasonable care in maintaining dangerous instrumentalities on its premises, should the jury find the plaintiff to have been an invitee; if, in the alternative, the jury should find the plaintiff to have been a licensee, the trial court instructed upon the theory of attractive nuisance.

The school district contends, in support of its assignments of error, that the plaintiff was a licensee, as a matter of law; that those instructions which allowed the jury to find her to have been an invitee and which instructed upon the issue of negligence were, therefore, improper; and that the instructions concerning attractive nuisance were also improper because the theory of attractive nuisance could not be applied to this case.

We are satisfied that Judy Kidwell was an invitee, as a matter of law. It follows that the giving of the instructions on attractive nuisance, which could have no bearing on this case, and the instructions concerning the invitee-licensee question, were not prejudicial to the school district.

The school district requested an instruction setting out the conditions under which the piano could be found to have been a dangerous instrumentality, and assigns error to the court's refusal to give this instruction, contending that without this instruction the trial court appeared to assume that this piano was a dangerous instrumentality. We are satisfied that this objection is not well taken; the question of whether or not the piano was a dangerous instrumentality was directly placed before the jury by the court's instructions. While the requested instruction might well have been given, the subject matter was covered by other instructions,

and fairness to the school district did not require repetitious instructions by the trial court.

 The trial court's instruction, withdrawing the defense of third-party intervention, is supported by the plaintiff solely on the basis that this is an attractive-nuisance case. We do not agree that this was such a case. However, the acts which would create liability under either the negligence or attractive nuisance theory of this case are the same, *i.e.*, the leaving of the dangerous instrumentality within reach of small children who will use the school room. Since the action of the small children was the only intervening cause, we are convinced that the trial court properly withdrew the defense of third-party intervention.

The school district had also pleaded, as an affirmative defense, that it had no control over the minor plaintiff at the time of the accident. Instructing upon this affirmative defense, the trial court told the jury that public school teachers are given jurisdiction over the conduct of their pupils while going to and from school, while on the school grounds, and during intermission or recess periods. The school district assigns this instruction as error on the ground that it told the jury, in effect, that there should have been a teacher supervising the Bluebird meeting. Considered, however, in its context, it could not have had the effect that the school district claims for it.

Finding no prejudicial error, the judgment is affirmed.

FINLEY, FOSTER, and HUNTER, JJ., concur.

MALLERY, J., dissents.

---

April 6, 1959. Petition for rehearing denied.