[No. 35329. *En Banc.* October 5, 1961.]

ROY L. MILLER *et al.*, *Respondents*, v. RALPH E. STATON *et al.*, *Appellants.**

*Reported in 365 P. (2d) 333.

*Brethorst, Fowler, Bateman, Reed & McClure (Frank W. Payne,* of counsel), and *B. E. Kohls,* for appellants.

*George N. Apostol,* for respondents.

HUNTER, J.—This action arose as a result of personal injuries sustained by the plaintiff, Mary Agnes Miller, when she was knocked down by two patrons who were fighting in the defendants' tavern. Judgment was entered upon a jury verdict awarding the plaintiff $25,743.37. The defendants appeal.

On New Year's Eve, 1957, the plaintiff, with her husband and friends, went to the tavern of the defendants (appellants) in Omak, Washington, about 9:30 or 10:00 o'clock. They were seated at a table next to the dance floor where they drank beer during the evening, continuing until about 2:20 in the morning when the fight occurred.

The defendants first contend there was insufficient evidence to sustain a finding of negligence. The testimony on this issue is in sharp dispute; however, the evidence most favorable to the plaintiff (respondent) is as follows:

The dance floor was crowded; there were approximately two hundred people in the tavern, which was designed to accommodate a maximum of eighty-four people. Quite a few of the patrons were under the influence of alcohol; some were staggering. There previously had been two fights, or near fights, that evening. Also, while under the influence of alcohol, the two participants in the fight which caused

the injuries to the plaintiff, had caused a disturbance earlier that evening, and either one of the proprietors or one of the waiters had cautioned them.

Mary Kusler, who was seated at the table with the plaintiff, testified on cross-examination as follows concerning the fight which caused the plaintiff's injuries:

"Q From the time you first observed these men fighting until your table was knocked over, how much time elapsed? A Well, that would be hard to say. A matter of minutes. Q Now a matter of minutes. A minute is sixty seconds. A I know that. Q Do you mean it took you a matter of minutes to get up from behind your table and get out of the way before it was knocked over? A It could have. I was scared. . . ."

Edna Reeves, who was sitting at a table behind the one at which the plaintiff was sitting, testified on direct examination:

"Q And tell the jury now, in your own words, what you were doing just prior to the fight and what happened during the fight the best you can. A Well, I was sitting facing the dance floor and I don't know where the fight started. When I first saw it they were approximately in the middle of the room. There was dancing going on at the time and I saw these two men hitting each other and they gradually worked their way across to the left side—it would have been to my left, and this one fellow had the other just partially bent over the booth, and they, of course, kept hitting each other; and he more or less gained his balance, the one that was bent over the booth and they fought at an angle towards my direction, only Mrs. Miller's table was just in front of me only it seemed like the corner of her table and the chair somehow as it struck—it just looked like one solid blow—and it threw her backwards, and I would say it sent her about three or four feet back, and they were still fighting . . ."

On cross-examination, Edna Reeves testified:

"Q And then you said they gradually worked their way over to what would have been your left, against the booths. A Yes. Q Well, what do you mean by gradually? A Well, one blow didn't send him there. They struck each other several times before they finally—or were to my left as I stated. . . . Q How many swings would you say that they took

at one another from the time you first observed the fight? A I wouldn't say. Q Well, you said they were swinging. Do you mean— A Well, if you watch a fight you don't count the blows. Q Well, would you say there were more than five? A Certainly. Q More than ten? A Yes. Q More than fifteen? A I couldn't say. . . ."

■ The general rule followed by this court is that an innkeeper or restaurant owner owes the duty to his guests to exercise reasonable care to protect them from injury at the hands of a fellow guest. *Gurren v. Casperson*, 147 Wash. 257, 265 Pac. 472 (1928); *Peck v. Gerber*, 154 Ore. 126, 59 P. (2d) 675, 106 A. L. R. 996 (1936); *Thomas v. Bruza*, 151 Cal. App. (2d) 150, 311 P. (2d) 128 (1957).

■ Applying this rule as to the duty of care owed by the defendants to the plaintiff in considering the foregoing evidence, the jury was entitled to conclude that, by the exercise of reasonable care for the safety of their patrons, the defendants in the operation of their tavern knew or should have known a fight was ensuing in time to have stopped the fight thereby avoiding the resulting injuries sustained by the plaintiff. The trial court was correct in denying the defendants' motion for a directed verdict on the grounds of insufficiency of the evidence.

■ The defendants assign error to the refusal by the court to give their proposed instruction "K." We find the rule of law proposed was adequately covered by other instructions and, therefore, the defendants were not prejudiced. *Kidwell v. School Dist. No. 300*, 53 Wn. (2d) 672, 335 P. (2d) 805 (1959).

The defendants assign error to the court's instructions Nos. 11 and 14, for the reason they overemphasize the duty of the defendants to preserve order and prevent injury to their guests. The instructions are in some respects repetitious, but not to the extent of preventing the jury's fair understanding of the law of the case; therefore, they were not prejudicial.

■ The defendants further contend the trial court erred in giving instructions Nos. 11 and 14, for the reason that when read alone they place upon the defendants the duty

of an insurer of the plaintiff's safety. Instructions may not be singled out without reference to the other instructions. *Lozan v. Fraternal Order of Eagles, Aerie No. 3*, 53 Wn. (2d) 547, 335 P. (2d) 4 (1959). Instructions must be read in the light of the other instructions given. *Bell v. Bennett*, 56 Wn. (2d) 780, 355 P. (2d) 331 (1960). Considering the instructions in this manner, it is clear the court went no further than to place upon the defendants the duty to exercise reasonable care for the safety of their patrons; however, we do not approve the form of the instructions. The objections could have been avoided by a more careful drafting by the scrivener.

■ The defendants further contend the trial court erred in giving instructions Nos. 14 and 15, since this removed from the jury's consideration the question of causal relationship between the defendants' negligence and the resulting injury to the plaintiff. They argue that other instructions relating to proximate cause may not be considered since numbers 14 and 15 are formula instructions and, in such instances, all elements of proof essential to one's liability must be contained in each instruction, citing *Donner v. Donner*, 46 Wn. (2d) 130, 278 P. (2d) 780 (1955). This objection to the instructions was not brought to the attention of the trial court. No exceptions having been taken on this ground, it cannot be raised for the first time on appeal. *State v. Cogswell*, 54 Wn. (2d) 240, 339 P. (2d) 465 (1959).

■ The defendants contend the trial court erred in admitting into evidence, over objections, testimony concerning fights that occurred in defendants' tavern in the fall of 1957. We disagree. One of the issues relating to the exercise of reasonable care for the guests' protection was whether additional policing was necessary on this evening, in view of the defendants' knowledge of the likelihood of boisterous conduct, disorder, and fights on the occasion of a New Year's Eve celebration, with the attendant imbibing of intoxicants. Evidence of conduct of patrons on prior occasions is admissible to show similar conduct could reasonably have been anticipated by the defendants during a subsequent festive

evening such as New Year's Eve, which would require policing reasonably adequate for their guests' protection. The objectionable evidence was admissible for this purpose. McCormick on Evidence, § 167 (1954); See *Tonning v. Northern Pac. R. Co.* 180 Wash. 374, 39 P. (2d) 1002 (1935).

■ The defendants contend the court erred by admitting into evidence testimony concerning the practices of another establishment, the Eagles Lodge in Omak, as to policing and keeping order. We agree. Although, where negligence is in issue, the usual conduct or general custom of others under similar circumstances is relevant and admissible, such custom may not be established by evidence of conduct of single persons or businesses. 65 C. J. S. Negligence, § 232 (1950). Therefore, the evidence as to the custom of policing in the bar of the Eagles Lodge was inadmissible and prejudicial to the fair consideration by the jury of the adequacy of care exercised by the defendants for their patrons' safety.

The defendants further contend the court erred in admitting into evidence plaintiff's exhibits Nos. 24 and 25, which were medical bills incurred by the plaintiff for treatment of a herniated diaphragm and a duodenal ulcer, for the reason there is no showing they were caused by the accident.

The record discloses these conditions of the plaintiff developed more than a year after the accident in question. The medical evidence most favorable to the plaintiff is as follows: Dr. Gordon B. O'Neil, a specialist in the field of orthopedic surgery, testified:

"Q And did you form any conclusions as a result of your most recent examination? A Yes. . . . The patient has developed a certain amount of anxiety because of this pain, I noted, and *this may be a contributing factor* in the problem of peptic ulcer. The other thing I discussed with her was the problem of original injury to the diaphragm. The patient fell on her back and of course the abdominal organs would force into the diaphragm. *It is possible* to tear a diaphragm without particular problems, the diaphragm tear healing, and then gradually stretching. I am not a specialist in that field but it is my opinion that *this could have* occurred in this particular injury. Q Did you advise Mrs. Miller to see a specialist in that field? A I advised her that

she should rely on the specialists who are investigating that problem at present. Q Did you have any further conclusions? A No, sir. . . . " (Italics ours.)

He further testified:

"Q In your opinion, could nervousness, worry and concern cause a peptic ulcer? A That is one of the accepted, in my opinion, contributing cause to peptic ulcer or stomach ulcer. . . . "

On cross-examination, Dr. O'Neil testified:

"Q Again, to answer my question, you cannot say that this injury to her diaphragm probably occurred as a result of her accident on January 1st, 1958? A I will not say *'probable'* for the reasons I gave you, but in my experience which goes outside of my field, *I would say it is possible.*" (Italics ours.)

█ The causal relationship of an accident or injury to a resulting physical condition must be established by medical testimony beyond speculation and conjecture. The evidence must be more than that the accident "might have," "may have," "could have," or "possibly did," cause the physical condition. It must rise to the degree of proof that the resulting condition was probably caused by the accident, or that the resulting condition more likely than not resulted from the accident, to establish a causal relation. *Clevenger v. Fonseca,* 55 Wn. (2d) 25, 345 P. (2d) 1098 (1958); *Bland v. King County,* 55 Wn. (2d) 902, 342 P. (2d) 599, 135 A. L. R. 517 (1959).

█ The medical testimony most favorable to the plaintiff does not establish such a causal relation between the accident and the herniated diaphragm and the peptic ulcer of the plaintiff. The *general statement* by Dr. O'Neil that nervousness, worry and concern "is one of the accepted . . . contributing" causes of a peptic or stomach ulcer has not been related by the expert witness to the instant case, and, therefore, it cannot constitute testimony that the *plaintiff's condition* of worry and anxiety was a probable cause of her ulcer. Therefore, the trial court erred by admitting into evidence the medical bills for treatment of these con-

ditions. We said in *Wappenstein v. Schrepel*, 19 Wn. (2d) 371, 142 P. (2d) 897 (1943):

"During the course of the trial the court ruled that evidence concerning the amputation of the toe was improper, on the ground that it covered a matter not alleged in the complaint. The court also instructed the jury that the respondent had failed to prove that she had suffered a kidney infection as a result of the accident. It further appears from the evidence that the high blood pressure, the liver trouble, and the constipation had been of long standing prior to the accident and were not caused thereby. Nevertheless, the court admitted the foregoing exhibits covering the charges grouped as a whole, without any attempt at segregation.

"It is apparent that the jurors had no way of determining to what extent the charges were properly allowable, and therefore they were compelled to resort to speculation and conjecture upon that subject. It is equally impossible for us to determine how much of the general verdict was allocated to expenses incurred for treatments and hospital services occasioned by the injuries sustained in the accident. Furthermore, it is impossible for us to say whether or not, in fixing the amount of its general verdict, the jury was influenced by a consideration of the total amount of respondent's medical and hospital bills for all of her ailments, regardless of their relevancy to the injuries sustained as a result of the collision.

". . . *The jury was allowed to consider evidence that was inadmissible and to take into consideration expenditures for which the appellant was not liable, and which, if considered, would in all probability influence the jury in determining the seriousness of the injuries resulting from the accident.*

"The judgment is reversed, with direction to the trial court to grant the motion for a new trial." (Italics ours.)

The reasoning of the *Wappenstein* case is controlling in the instant case. The admission of exhibits Nos. 24 and 25 constituted prejudicial error.

The defendants assign error to the court's admitting into evidence the plaintiff's exhibit No. 13, which is a letter from Dr. O'Neil in Seattle to Dr. Fischnaller in Omak, relative to his diagnosis and recommended treatment for the plaintiff. The plaintiff had been referred to Dr. O'Neil by Dr. Fischnaller.

The defendants contend the letter constituted a summation of Dr. O'Neil's testimony, that it was not the best evidence, and that it placed undue emphasis on the opinion of this witness.

The record discloses that Dr. O'Neil testified at length and in detail as to his diagnosis of the plaintiff, upon which he was cross-examined by the defendants' counsel. Nothing is contained in the letter that was not included in his testimony. The defendants were not prejudiced by undue emphasis, resulting from the admission of the exhibit, for the reason that the defendants introduced exhibit No. 20, a letter from the defendants' witness, Dr. Cadman, to Dr. Fischnaller, containing Dr. Cadman's opinion which was contrary to and more extensive than that expressed by Dr. O'Neil in exhibit No. 13. Moreover, the issue was raised by defendants' counsel, in his cross-examination of Dr. O'Neil, as to whether the plaintiff came to Dr. O'Neil voluntarily or by reason of a reference from Dr. Fischnaller. The question was asked whether he had a letter to substantiate the reference. Exhibit No. 13 constituted correspondence with Dr. Fischnaller as evidence of this reference and was admissible for that purpose.

Finally, the defendants contend the court erred in denying their motion for a new trial on grounds that the damages awarded were so excessive as unmistakably to indicate that the verdict must have been the result of passion or prejudice. Due to our disposition of this case, it is not necessary for us to pass upon this contention.

We have considered all the errors assigned by the defendants in view of the necessity of remanding this case for a new trial. From the errors committed, we are satisfied the defendants were denied a fair trial. The judgment entered upon the verdict by the trial court is reversed, and the cause is remanded for a new trial on all issues.

The costs on this appeal shall abide the final determination of the cause.

FINLEY, C. J., HILL, DONWORTH, and WEAVER, JJ., concur.

ROSELLINI, J. (concurring)—A greater degree of care is

required of a proprietor of a place where intoxicating liquor is sold than is indicated by the majority or the dissent.

In *Reilly v. 180 Club, Inc.*, 14 N. J. Super. 420, 82 A. (2d) 210, in speaking of the standard of care, the court said, p. 424:

"It is in the law the duty of a tavern-keeper to exercise reasonable care, vigilance, and prudence to protect his guests from injury from the disorderly acts of other guests. [citing cases.]

"While the standard of care is that of an ordinarily prudent person, yet it must be realized that reasonable care is a relative term in that the degree of care must be commensurate with the risks and dangers attending the activity being pursued. It is a subject of common knowledge that the consumption of a procession of drinks of intoxicating liquors produces a variety of reactions in the deportment of human beings, the development of which emotions the tavern-keeper should be reasonably alert to detect."

In the case of *Connolly v. Nicollet Hotel*, 254 Minn. 373, 95 N. W. (2d) 657, the rule is stated as follows, p. 382:

"It is the policy of the law, both statutory and decisional, to protect the public from social consequences of intoxicating liquor. There is perhaps no field of business activity more hedged about with state and municipal laws and regulations designed to protect the public. When a person engaged in that business permits crowds to gather upon his premises for profit, he must recognize the risks which flow from the nature of the business."

The test of whether the duty of reasonable care is discharged, is the probability or foreseeability of injury to a plaintiff. For the risk of injury to be within the defendant's range of apprehension, it is not necessary that he shall have had notice of the particular method in which an accident would occur if the possibility of an accident was clear to a person of ordinary prudence. *Zurich General Accident & Liability Ins. Co. v. Childs Co.*, 253 N. Y. 324, 171 N. E. 391.

The evidence disclosed that the dance floor was crowded and that there were approximately two hundred people in the tavern, which was designed to accommodate a maxi-

mum of eighty-four people. Quite a few of the patrons were under the influence of alcohol; some were staggering; and there previously had been two fights, or near fights, that evening. Also while under the influence of alcohol the two participants in the fight which caused the plaintiff's injuries, had caused a disturbance earlier in the evening, and had been cautioned by an attendant.

It is a common experience that when persons are congregated in great numbers in crowded premises for the purpose of celebrating a special event, such as New Year's Eve, and indulge in the consumption of intoxicating liquor for a long period of time, a fracas will develop where the probability of injury to someone will result.

Here, a person in the exercise of reasonable care, which an ordinarily prudent person under the circumstances would exercise, would foresee the likelihood that such conduct eventually would result in injury to a person.

HILL, J., concurs with ROSELLINI, J.

MALLERY, J. (dissenting)—I agree that the cases relied upon in the majority opinion are apropos and correctly state the Washington rule of law. However, I think the majority opinion does not correctly construe either the cases cited or the facts in this case.

As to the law, the majority opinion states:

"The general rule followed by this court is that an innkeeper or restaurant owner owes the duty to his guests to exercise reasonable care to protect them from injury at the hands of a fellow guest. *Gurren v. Casperson,* 147 Wash. 257, 265 Pac. 472 (1928); *Peck v. Gerber,* 154 Ore. 126, 59 P. (2d) 675, 106 A. L. R. 996 (1936); *Thomas v. Bruza,* 151 Cal. App. (2d) 150, 311 P. (2d) 128 (1957)."

This statement of the rule is incorrect because it is incomplete and therefore misleading. The cited cases include the specific qualification that the *duty* arises *after* the tavern keeper has *notice* of the peril confronting the guest and at a time when he has an opportunity to protect him. To omit these elements changes the liability of tavern keepers from one predicated upon negligence to that of an insurer.

In *Gurren v. Casperson,* 147 Wash. 257, 265 Pac. 472, the only Washington case cited, a woman, who occupied a room in a hotel as a guest, *called* the hotel clerk and *informed* him that one Sullivan, who was intoxicated, had entered her room and refused to leave. Hotel employees came immediately and ejected him. The opinion's recital of the facts in that case then continued:

" . . . The plaintiff *again called* the clerk of the hotel and *requested* that the defendant Sullivan be kept away from her room. A short time thereafter, the plaintiff unlocked her door and started to cross the corridor, when she was assaulted by the defendant Sullivan who struck her, knocked her down, cutting her face, and beating her until she was unconscious. The testimony is conclusive that the plaintiff did not know the defendant Sullivan and had never seen him before the night of the assault." (Italics mine.)

The court held the hotel liable for the plaintiff's injuries and predicated the liability upon the following statement of law:

" . . . Here, we have a guest in a hotel assaulted by another guest, *after* the landlord had been *expressly warned* of the possibility of this happening, and *after* the assaulted guest had *demanded* from the clerk of the hotel *protection* against the acts of the wrongdoer." (Italics mine.)

Thus, the *duty* of the innkeeper to protect his guests is not that of an *insurer,* because it is qualified by the requirement that he must have notice of the specific impending peril at a time when he has an opportunity to prevent the injury. Failure to perform this duty under such circumstances then constitutes actionable negligence. This is the rule of the only Washington case cited, and it accords with the universal rule of a tavern keeper's liability.

Notice of the peril and ability to protect the guest as the prerequisites of a tavern keeper's *duty* to protect a guest are based upon the established rules of tort liability.

Mortal man is held to know the natural and probable consequences of his own acts, but he does not have the power of divination and is, therefore, not charged with

knowledge of what others may do. Notice of the peril is, therefore, the basis of actionable negligence in failing to prevent a third person's harm to others. This is because of the universal rule that one has the right to presume that others will obey the law until there is notice to the contrary. The duty to act to prevent injury to another by a third person, when it exists, is predicated upon certain special personal relationships. Thus, a mere bystander is not liable for a battery by a third person even when he has an opportunity to prevent it.

Obviously, the duty to protect a guest can be fulfilled only by taking appropriate measures against a particular person at a particular time when a known peril exists. By the nature of things, the *duty* to protect must, therefore, be brought into existence by knowledge of the peril at a time when there is an opportunity to perform the duty. Only insurers have liability for third party torts in the absence of knowledge of peril and an opportunity to safeguard against it. *Gurren v. Casperson, supra,* declares the law in this state, and it specifically exempts tavern keepers from the liability of insurers.

The next case relied upon by the majority is the *Oregon* case of *Peck v. Gerber,* 154 Ore. 126, 59 P. (2d) 675, 106 A. L. R. 996, in which the plaintiff was injured when a fighter was knocked over and into her. One Gordon was a regular patron of the defendants' place of business, who frequently sang at the instance of other patrons. He was hotheaded and belligerent when drinking. The specification of negligence in the complaint was the permitting of a person *known to the defendants* to have violent and disorderly propensities to be admitted and remain upon their premises. The court specifically held that the evidence was sufficient to prove the dangerous propensity and that the defendants had *notice* of it. The trial court therein instructed the jury as follows:

" 'If you find that Gordon Leslie was a person of violent and disorderly propensities, that alone would not make the defendant responsible or liable for the plaintiff's alleged injuries. Before you can return a verdict against the

defendant you must go further and find the violent and disorderly propensities of Leslie Gordon were such as to make him dangerous as to the safety of others and that *such propensities were known* or should have been known to the defendants. In other words, two things must concur: You must find that Gordon Leslie was such an individual, and also find that such propensities were known or should have been known to the defendants.' " (Italics mine.)

Here, again, the right to rely upon the presumption that others will obey the law was overcome by allegations and proof by the plaintiff of *notice* to the defendants to the contrary. The notice was the basis of the tavern keeper's duty to eject Gordon from the premises at a time that would have avoided the injury. While this Oregon case does not declare the law in Washington, it does not conflict in any way with the Washington rule that a tavern keeper's duty is based upon his notice of the guest's peril and his opportunity to protect him.

In *Thomas v. Bruza,* 151 Cal. App. (2d) 150, 311 P. (2d) 128, a California case, which the majority opinion purports to follow, the plaintiff was allowed to amend his complaint in order to state a cause of action. The court therein said:

" . . . No allegation of a negligent supervision of the saloon appears. Neither does the complaint allege that respondent *had an opportunity to prevent the battery* or that the blow was dealt in the presence of respondent. There is no allegation that the injuries of appellant were the *proximate result of respondent's negligence.* Interpreting the complaint liberally, the most that can be reasonably inferred is that respondent sold to Chavez alcoholic beverages knowing him to be quarrelsome and pugnacious when drunk; that Chavez became intoxicated and struck appellant and that the blow caused the latter's injuries. *Such allegations are not enough to state a cause of action against respondent.* . . . " (Italics mine.)

Thus, in California, it appears that "opportunity to prevent the battery" must appear in order for the injury to be the "proximate result of respondent's negligence." "Opportunity to prevent the battery" can arise only from notice, not divination, of the imminence of the specific battery. The case is not in conflict with the Washington rule.

After citing and purporting to rely upon the foregoing cases, which negative the tavern keeper being liable as an insurer, the majority opinion proceeds to impose an insurer's liability upon him. This is made to appear with certainty in the majority opinion's ruling upon instructions Nos. 11, 14, and 15, which were given by the trial court, and the defendants' proposed instruction No. K, which was refused.

Instruction No. 11, which the majority opinion approves, states:

"You are instructed that plaintiff had the right to rely upon the belief that defendants or their employees would preserve order and protect the guests from injury."

Such a liability for the torts of others is, of course, the liability of an insurer, since it is not predicated upon either a proximate cause attributable to the defendants or proof that their duty to protect the plaintiff came into being by reason of notice of peril and opportunity to guard against it.

An insurer's burden was placed upon the defendants in instruction No. 14 because it imposes a duty without notice. It reads:

"You are instructed that the defendants were charged by law with the duty of preventing disorderly conduct in their place of business. If you find that defendants did not take all the steps necessary to prevent disorder in their place of business, which would have been taken by an ordinarily prudent tavern owner, on the night in question, then your verdict must be for the plaintiffs."

The court dispensed with notice and emphasized and repeated the insurer's *burden* for a third time in instruction No. 15, which reads:

"You are instructed that if a reasonable tavern owner should have expected the possibility of disorderly conduct in defendants' place of business on the night in question, defendants were under a duty to employ a reasonably sufficient number of persons so that the premises would be properly policed and afford reasonable protection to the patrons. If you find from the evidence that defendants did not have a reasonably sufficient number of persons em-

ployed on and policing the premises you shall find them negligent and your verdict must be for the plaintiffs."

The trial court declined to give the defendant's proposed instruction No. K, upon proximate cause, which reads:

"You are instructed that the law does not require the defendants to have anticipated that the fight in question would start. If you find the defendants were not negligent in admitting Gelven and Saunders to their establishment, they are negligent only if they or their employees had knowledge of the fight and had a reasonable opportunity to stop it, but failed to do so."

This requested instruction is a correct statement of the law with regard to the duties of tavern keepers. The majority opinion, in rejecting it, by necessary implication holds that a tavern keeper is an *insurer*.

This is further made to appear with certainty from the determinative facts in this case, which are: At about 2:00 a.m., Mr. and Mrs. Saunders were preparing to go home from a New Year's party at the defendants' tavern. He went to get their coats. Upon his return, he found one Gelven dancing with his wife. In a surge of jealousy, he rushed on the dance floor and started striking Gelven. Bystanders quickly separated the combatants, but not before they had injured plaintiff by knocking her to the floor.

From the first to the last, the plaintiff predicated her cause of action upon the theory that the defendants were *insurers* of her safety in accord with the instructions which she induced the trial court to give. For this reason, she did not allege or prove that the defendants were negligent in permitting Saunders on the premises because he was a dangerous person, that the defendants had notice of that fact, and that the defendants had an opportunity to protect her. On the contrary, her allegations of negligence were that the defendants failed to provide sufficient policing to prevent the fight. Of course, this is a sufficient allegation only as to an insurer.

The plaintiff, herself, testified:

"Q. Now you say you were sitting there and talking to her when something hit you in the back. Now just tell

the jury what you can remember of what transpired before you were hit in the back. A. Well, we was settin' there talkin' when all of a sudden she says: 'Oh, there is — Q. Now who is 'she'? A. That is Mary Kusler. She was settin' on my right and says: 'Oh, there is a fight' and as she said that, something hit my back."

It is obvious that the plaintiff in thus negativing the existence of notice of the danger to the defendants or an opportunity to prevent the injury did not contemplate relying upon anything but an insurer's liability.

The plaintiff's theory, as exemplified by the trial court's instructions, was that the defendants' negligence consisted of not having enough policemen and employees present to effectively prevent anyone and everyone from starting any kind of a disturbance in which anyone would be injured. Her pleading and proof raised no issue of any notice relative to the fighters in particular. In this posture of the pleadings and the evidence, the majority opinion's position is inexplicable when it asserts that there is a conflict of evidence upon the question of notice of peril and an opportunity to avoid injury, and that there is sufficient evidence to go to the jury upon that nonexistent issue.

A conflict of evidence exists when the parties have framed an issue and produce testimony in support of their opposing positions. The trier of the facts then chooses between them on the basis of credibility of witnesses. The purported conflict referred to in the majority opinion occurs in the testimony of the same witnesses. Discrepancies in the testimony of a witness does not constitute a conflict even when the ultimate statement of fact is in doubt.

The majority opinion's quotation from the testimony of Edna Reeves is supposed to conflict with her following testimony, which it omitted:

"Q. Well, how long did all of this take place? A. I couldn't say. . . . Q. You would not venture to say how long the fight lasted? A. No. Q. You don't know whether it was five minutes or five seconds then? A. No. . . . Q. How long would you say it took you to get

from your chair over to where Mrs. Miller was? A. I couldn't say."

This unqualified disavowal of testimonial knowledge certainly does not constitute the proof of notice that is necessary.

The majority opinion purports to find an internal conflict in its quotation from the testimony of Mary Kusler with other testimony given by her, which is as follows:

"Q. And you jumped right up as soon as you saw the fight and you started to get out of the way? A. Yes, sir, I did. Q. And just as you got out of the way the table hit the floor? A. Just that fast. Q. It happened very fast? A. Yes it did. . . . Q. You said they really moved fast when you first saw them until they hit the table? A. Well, to me it was a matter of seconds. It might have been a matter of minutes."

The full import of Mary Kusler's and Edna Reeves' testimony in its most favorable light does not constitute a scintilla of proof of notice of the peril to the defendants and an opportunity on their part to protect the plaintiff.

The plaintiff proved that jealousy was the proximate cause of the fight which injured her. Without proof that the fighters were known to be dangerous persons, the only other possibility of defendants' liability for negligence that could exist would be if the fight continued for such a long time prior to the plaintiff's injury that notice of the peril was brought home to the defendants, and that they failed to act while they still had an opportunity to protect the plaintiff. She proved that the injury happened very quickly, and she did not plead or attempt to prove any duration of the fight such as would constitute notice of her peril and an opportunity on the part of the defendants to protect her. Of course, the duration of the fight after the injury is irrelevant as any opportunity to prevent the injury was then past. The majority opinion, *sua sponte,* gives the plaintiff the benefit of an issue not pleaded and for which there is not a scintilla of supporting evidence in the entire record.

I think this court has no right to impose an insurer's liability upon tavern keepers for the reason that intoxicating liquor has long been held to be subject to the police power, and courts do not formulate public policy in such matters. The legislature, in the absence of an initiative by the people, is the sole authoritative source of such public policy. The legislature in its wisdom created a state liquor board with regulatory and disciplinary powers over taverns. Neither the legislature nor the liquor board has seen fit to require the presence of policemen in taverns, or require any other special provision for policing them. Indeed, thousands of barmaids serve unassisted shifts in the taverns all over the state. This situation is incompatible with any judicial legislation which would impose a special policing obligation to prevent all injury to all people under all circumstances upon tavern keepers.

I think this court should continue to follow the established Washington rule. Upon the filing of the majority opinion with the instructions approved therein, we will stand alone among the states in imposing the liability of an insurer upon tavern keepers.

Moreover, the majority and concurring opinions mar the symmetry of the law of proximate causation by failing to recognize the difference between the liability for negligence and the liability of an insurer. Liability for negligence is predicated upon proximate causation, the liability of an insurer is not. The majority do not take the position that a tavern keeper is an insurer. It is, therefore, forced in order to find proximate causation where none exists to depart from the long established rules upon the subject.

It should be remembered that the tavern keepers did not injure the respondent wife. A fight caused by jealousy was unequivocally proven to be the proximate cause of the injury. The men who did injure her were not made parties defendant in this action. Their relationship to the appellants was merely that of guests, which, of course, does not invoke the rule of *respondeat superior* against the tavern keepers.

No attempt was made to show a breach of duty on the part of the tavern keepers after notice of the affray was

brought home to them at a time when it was possible to discharge their duty to protect the respondent wife against a known and impending danger.

The general conditions prevailing throughout the evening did not produce the harm in question. Even if the law of proximate causation be so far perverted as to attribute the injury to them, still the law of contributory negligence would be a shield, unless it too is destroyed.

No citation is necessary for the elementary rule that every one is charged with the exercise of ordinary care for his or her own safety and protection. No one is required to foresee a violation of the law by another, and both parties to this action had an equal right to presume, until she or they had notice to the contrary, that others present would obey the law. The burden of foreseeability of danger was, therefore, precisely the same upon the respondent wife, who could have left the party at the first indication that it was dangerous, as it was upon the appellants.

It is anomalous for a person to deny her own contributory negligence in spending the entire evening drinking at a New Year's party and then claim to be aggrieved by a tavern keeper's negligence because the party was exactly what she at all times knew it to be—a typical New Year's party in a tavern. The imposition of an insurer's liability in the field of public policy involving the police power constitutes judicial legislation.

The case should be dismissed. I dissent.

OTT and FOSTER, JJ., concur with MALLERY, J.