[No. 25015-2-II. Division Two. March 29, 2002.]

DUKE MA'ELE, *Appellant*, v. FLORINE ARRINGTON, ET AL., *Respondents*.

558

*Patrick A. Palace*, for appellant.

*Elizabeth A. Jensen* (of *Richard J. Jensen & Associates, P.S.*), for respondents.

ARMSTRONG, C.J. — The trial court found Florine Arrington solely at fault for a car accident she had with Duke Ma'ele. Several chiropractic doctors testified that the accident injured Ma'ele. But a biomechanical engineer said that he would not expect a person to be injured in such a low-energy collision. The jury found that the accident did not proximately cause Ma'ele's injuries and awarded no damages. On appeal, Ma'ele argues that the evidence does not support the verdict; he also contends the court erred in allowing the engineer to testify because (1) he was not qualified

to testify about injuries, and (2) the defense did not supply discovery information requested of the expert about other cases on which he had worked. Finally, Ma'ele says the court should have let him tell the jury that he did not seek medical care for a time because he could not afford it. We find no error and, thus, affirm.

## FACTS

Florine Arrington rear-ended Duke Ma'ele when he was stopped at a stoplight. Ma'ele sued Arrington for damages. The trial court ruled that Arrington was solely at fault for the accident; the only issue at trial was damages.

Before trial, the court ordered Arrington to provide discovery to Ma'ele about other cases her defense expert, Dr. Tencer, had worked on. Ma'ele asked for case names and numbers, among other information. Arrington provided only a list of attorneys. Tencer testifies frequently, but he claimed to keep no records about case names or numbers. The court refused to exclude Tencer's testimony as Ma'ele requested.

At trial, Ma'ele called two chiropractors who testified that the accident injured him and that he would have long-term effects. The defense chiropractor testified that Ma'ele was not seriously or permanently injured. Dr. Tencer, a biomechanical engineer and defense expert, testified about the amount of force involved in low-speed collisions. He concluded that, based on his own and other studies in the field, he would not expect a person to be injured in the Arrington-Ma'ele collision.

Ma'ele, a military employee, moved to Kansas City after the accident and later moved back to Washington. Ma'ele wanted to testify that he did not receive medical care while in Kansas City because he could not afford it; he did not want the jury to think he stopped having care because he did not need it. But the trial court refused to allow the testimony, reasoning that it would lead to a collateral issue—insurance.

The jury found that Arrington's negligence did not proximately cause injuries to Ma'ele and awarded no damages. The trial court denied Ma'ele's motion for a new trial, and he now appeals.

ANALYSIS

I. New Trial

Ma'ele asserts that the trial court should have granted his motion for new trial. He says that the evidence does not support the verdict and, therefore, it must have been the result of passion or prejudice, and he claims that the jury did not do substantial justice. CR 59. Arrington replies that Dr. Tencer's testimony supports the verdict and that the jury did not award damages because they believed the crash could not have hurt Ma'ele.

■ The trial court may grant a new trial if the damage award unmistakably suggests that the jury reached the verdict because of passion or prejudice. CR 59(a)(5). A new trial is also appropriate if there is no evidence or reasonable inference to justify the verdict, or if the jury did not do substantial justice. CR 59(a)(7), (9). We review the trial court's decision on a motion for a new trial for abuse of discretion. *Palmer v. Jensen*, 132 Wn.2d 193, 197, 937 P.2d 597 (1997). While we may order a new trial, appellate review is narrow and we rarely exercise the power. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 330, 858 P.2d 1054 (1993).

Two doctors testified that the car accident injured Ma'ele and he would suffer ongoing effects. The defense doctor, Dr. McMillin, testified that Ma'ele likely suffered a mild strain from the accident and that most of his injuries were unrelated to the accident.

■ But Dr. Tencer, a biomechanical engineer, testified that a crash like this one generally does not cause injuries. Tencer has extensively studied low-speed collisions; he calculated the maximum force that could have impacted

Ma'ele's body, opining that his own and other research shows that such force does not injure people. The jury was entitled to believe Tencer over any of the other witnesses. *Cox v. Charles Wright Acad., Inc.*, 70 Wn.2d 173, 176, 422 P.2d 515 (1967).

Ma'ele cites many cases where the jury awarded special, but not general, damages.[1] In each case, the plaintiff was entitled to a new trial because the jury found that the accident caused injuries but believed the plaintiff suffered no pain. *See, e.g., Palmer*, 132 Wn.2d at 203. The cases are distinguishable. The jury here found that the accident did not injure Ma'ele. The only question is whether the evidence supports this conclusion. *Palmer*, 132 Wn.2d at 201-02. It does.

## II. Expert Testimony

### A. Admissibility of Tencer's Testimony

Ma'ele argues that a party must offer medical testimony to show the connection between accident and injury, and Tencer, according to Ma'ele, was not qualified to give such an opinion. In addition, he argues that the court should not have let Tencer testify because he and the defense did not comply with the court's order compelling discovery. Arrington responds that Tencer did not have the information Ma'ele asked for and that Ma'ele suffered no prejudice because he cross-examined Tencer at length about his work on similar cases.

▆▆ The first question is whether Tencer's research about forces in low-speed collisions is " 'generally accepted in the scientific community, thus satisfying the *Frye* test [*Frye v. United States*, 293 F. 1013 (1923)] for admissibil-

---

[1] *Krivanek v. Fibreboard Corp.*, 72 Wn. App. 632, 637, 865 P.2d 527 (1993); *Lanegan v. Crauford*, 49 Wn.2d 562, 568, 304 P.2d 953 (1956); *Wooldridge v. Woolett*, 96 Wn.2d 659, 668, 638 P.2d 566 (1981); *Palmer*, 132 Wn.2d at 196; *Ide v. Stoltenow*, 47 Wn.2d 847, 849, 289 P.2d 1007 (1955); *Hills v. King*, 66 Wn.2d 738, 404 P.2d 997 (1965); *Shaw v. Browning*, 59 Wn.2d 133, 367 P.2d 17 (1961); *Daigle v. Rudebeck*, 154 Wash. 536, 282 P. 827 (1929).

ity.' " *Kaech v. Lewis County Pub. Util. Dist. No. 1*, 106 Wn. App. 260, 272, 23 P.3d 529 (2001) (quoting *State v. Baity*, 140 Wn.2d 1, 3, 991 P.2d 1151 (2000)), *review denied*, 145 Wn.2d 1020 (2002). We review de novo a trial court's decision to admit scientific evidence under *Frye. Kaech*, 106 Wn. App. at 272.

 Tencer has been studying low-speed impacts for five years. His conclusions have been "pretty much" accepted. Report of Proceedings at 278-79. He teaches at the University of Washington Medical School, he has received a federal grant for his research, and he has written a number of articles about the likelihood of injuries in low-speed accidents. Although Dr. Woodburn, a chiropractor, testified differently about the forces involved in low-speed collisions, other researchers around the world have reached conclusions similar to Tencer. The trial court did not err in ruling that Tencer's work on low-speed collisions is generally accepted in the scientific community.

 The next question is whether the witness qualifies as an expert and whether his testimony is helpful to the jury. ER 702. Again, we review the trial court's ER 702 decision for abuse of discretion. *Kaech*, 106 Wn. App. at 273.

 ER 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Tencer has a Ph.D. in engineering, teaches at a reputable medical school, and does federally funded research. His education and experience qualified him as an expert. His testimony about the force involved in low-speed collisions and the impact on the body helped the jury determine whether Ma'ele got hurt in this accident. The trial court did not err in allowing Tencer to testify as an expert.

 Ma'ele cites two cases to support his claim that only medical testimony can show causation. *O'Donoghue v. Riggs*, 73 Wn.2d 814, 440 P.2d 823 (1968); *Miller v. Staton*,

58 Wn.2d 879, 365 P.2d 333 (1961). These cases are distinguishable. In both *O'Donoghue* and *Miller*, the medical expert testified that he could not say with any certainty what caused the plaintiff's injuries. *O'Donoghue*, 73 Wn.2d at 821; *Miller*, 58 Wn.2d at 885-86. Medical causation must be established by a more-likely-than-not standard. *Miller*, 58 Wn.2d at 886. To offer testimony that something *could* have been a cause forces the jury to impermissibly speculate. *Miller*, 58 Wn.2d at 886.

In contrast, Tencer opined that the maximum possible force in this accident was not enough to injure a person. And this was not a medical opinion; Tencer expressed no opinion about Ma'ele's symptoms or possible diagnosis from those symptoms. He did not say that Ma'ele was uninjured in the crash, although the jury was entitled to infer that from his testimony. *See Wise v. Hayes*, 58 Wn.2d 106, 108, 361 P.2d 171 (1961). Tencer simply testified about the nature of the forces involved in low-speed collisions and the likelihood of injury from such forces.

B. Order to Compel

■ The trial court ordered Arrington to provide Ma'ele with information about Tencer's work in other cases. Arrington provided a list of attorneys Tencer worked with, but Arrington did not supply case names or numbers or billing information because Tencer apparently did not keep such information. The trial court has broad discretion in fashioning a remedy when a party fails to supply discovery. *Rhinehart v. Seattle Times Co.*, 51 Wn. App. 561, 574, 754 P.2d 1243 (1988). The trial judge was not willing to prevent Tencer from testifying, but the court reserved ruling on sanctions. The record before us does not show whether the question of sanctions came up again.

■ ■ The question is whether Ma'ele was prejudiced by the missing discovery information. The record shows that he was not. Parties have a right to show bias in cross-examination, but the trial court has discretion about the scope and extent of the examination. *Brown v. Spokane County Fire Prot. Dist. No. 1*, 100 Wn.2d 188, 202, 668 P.2d

571 (1983). Ma'ele established on cross-examination that Tencer worked mostly for defense lawyers and in 1998 earned approximately $240,000 from such work. He showed that Tencer was not licensed in Washington and was not an accident reconstructionist. He showed that Tencer spent more time on and earned more money from defense work than from academic research.

Even though he did not get to ask Tencer about specific cases or bring out the exact number of cases, Ma'ele successfully demonstrated Tencer's significant involvement with defense cases. In doing so, he exposed Tencer's potential bias. The trial court did not abuse its discretion by allowing Tencer to testify.

### III. Ability to Afford Medical Care

Ma'ele maintains that the trial court should have let him testify that he did not get medical care when he moved because he could not afford it. How much care he received related to the severity of his injury, he argues, and the jury was entitled to know that he did not stop treatment because he had recovered. The court did allow Ma'ele to explain part of the reason he did not seek care in Kansas City: He worried that it could hurt his career. The trial court has discretion to determine what evidence it will admit. *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 107, 864 P.2d 937 (1994).

Evidence of a plaintiff's financial circumstances is usually irrelevant and immaterial. *Cramer v. Van Parys*, 7 Wn. App. 584, 593-94, 500 P.2d 1255 (1972). And the court may exclude otherwise relevant evidence if it might mislead the jury or confuse the issues. ER 403. That Ma'ele could not afford medical care when he moved is potentially relevant. Without this explanation, the jury could infer that he did not seek care because he did not need it.

Still, the trial court did not abuse its discretion by limiting Ma'ele's testimony. The proposed testimony only partially explained his lack of medical treatment. The

defense would have been entitled to bring out the fact that Ma'ele could have gotten medical care through the military, but did not want any injuries on his military record. The court was concerned that this tangle of explanations would lead to collateral issues, such as insurance coverage and Ma'ele's finances. Also, Ma'ele did testify that he resumed care when he returned to Washington. The trial court properly exercised its discretion in limiting Ma'ele's testimony about his failure to get more treatment.

Affirmed.

SEINFELD and BRIDGEWATER, JJ., concur.