IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DEBRA JEAN BLUM, | ) | |
| | ) | No. 30610-1-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OUR LADY OF LOURDES HOSPITAL | ) | UNPUBLISHED OPINION |
| AT PASCO dba LOURDES HEALTH | ) | |
| NETWORK, a non-profit corporation, | ) | |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, A.C.J. — It is well settled in Washington that in a medical negligence

case, the defendant may move for summary judgment based on absence of competent

medical evidence to establish a prima facie case. Debra Blum's action against Our Lady

of Lourdes Hospital for injuries she claimed she suffered from a fall at the hospital was

dismissed on summary judgment on this basis. She appeals.

Having reviewed the record de novo, we affirm.

FACTS AND PROCEDURAL BACKGROUND

In August 2007, Ms. Blum was admitted to Our Lady of Lourdes Hospital for a

total left knee replacement. When told to report to the third floor she asked for assistance

getting there and staff brought her a wheelchair. When she attempted to sit down in the

wheelchair it either shifted or had not been properly positioned for her and she fell, hard on the floor, on her buttocks.

In July 2010, she brought this action against the hospital, alleging negligence in its "care, moving, transportation and treatment of the Plaintiff causing her to fall and sustain severe injuries." Clerk's Papers (CP) at 247-48. She claimed that the fall caused the retinas in both her eyes to detach and caused the eventual loss of vision in her left eye. She also claimed that the fall caused numbness and loss of sensation in both her legs.

The hospital denied liability, and about a year after the complaint was filed moved for summary judgment. It argued that Ms. Blum could not establish the essential elements of proximate causation and damages. In support, it submitted the declaration of Dr. Irvin Handelman, who is board certified in ophthalmology and has written articles on retinal issues. Among other observations, Dr. Handelman testified that in his experience, when people suffer a retinal tear or detachment they often attribute the detachment to an accident while "[i]n reality, the cause of most retinal detachments is due to congenital defects in the eye and the effect of aging." CP at 181. He noted that the retinal detachment in Ms. Blum's left eye occurred several months after the accident and the detachment in her right eye occurred almost two years later. Dr. Handelman expressed his opinion that on a more probable than not basis, Ms. Blum's retinal detachments were not proximately caused by her reported fall.

The hospital also relied on a report by Dr. Scott Carlson, a neurologist, who had performed an independent examination of Ms. Blum. His four-page, single-spaced report recounted his review of her history and prior MRI and CT scans. From that review and his own examination, he concluded that the numbness in her legs was likely psychological rather than physiological in nature. He observed that she was angry that she had been injured in a hospital that had never apologized or informed her of action it had taken to protect other patients. Dr. Carlson stated that "all of this is probably contributing to her anger and may well be causing this emotional presentation." CP at 178.

Ms. Blum filed a response in which she argued that issues of fact prevented summary judgment. Her response represented that she had consulted Dr. Charles C. Sung at the Retina Laser Eye Center, who "affirms that based on a reasonable degree of medical certainty, the fall which [she] sustained in August of 2007 at Lourdes Medical Center is more likely than not to have caused the detached retina." CP at 88 (emphasis and boldface omitted). No such letter was provided, however; instead, attached to her response, but unauthenticated and unsworn, were the following exhibits:

> An exhibit B, comprising pages of medical records from the Retina Laser Eye Center;
>
> An exhibit C, which was a letter addressed "Dear Sir or Madam," from Dr. Paulo Cancado, a neurologist, summarizing Ms. Blum's complaints, the results of his examination, and a conclusion, "These findings could explain

the symptoms in the left leg and could certainly be caused by the fall." CP at 129;

An exhibit D, several pages of information entitled "Detached or Torn Retina Treatment," apparently printed from a website for the Swedish Medical Center in Seattle; and

An exhibit E, several pages of information entitled "Retinal detachment," apparently printed from MayoClinic.com.

Her response purported to attach a letter from Dr. Sung as exhibit A but no letter was attached.

The hospital moved to strike the exhibits attached to Ms. Blum's response on the grounds they were inadmissible hearsay and unauthenticated. Rather than cure the problems with the Sung and Cancado materials, Ms. Blum filed a declaration of a new expert, Dr. Marvin Palmer. Dr. Palmer's declaration stated in its entirety:

> 1. I am the doctor whom saw and ~~treated~~ *examined* Mrs. Blum in 2008 for her detached retina after her fall.
> 2. Based upon a reasonable degree of medical certainty, the fall which Mrs. Blum sustained in August 2007 at Lourdes Medical Center is more likely than not to have caused the detached retina.

CP at 76 (the striking and italics indicate handwritten modifications by the doctor). The hospital moved to strike Dr. Palmer's declaration as legally insufficient "because it is based upon conjecture and speculation, and because it contains only conclusory statements without adequate factual support." CP at 66.

There is no indication in our record that the trial court ruled on the hospital's motions to strike, although in announcing its decision on the motion for summary

judgment it indicated clearly that it agreed with the hospital that Dr. Palmer's declaration was conclusory and that Ms. Blum's remaining exhibits were not admissible. It also commented on the fact that Dr. Palmer's affidavit was untimely. It granted the hospital's motion for summary judgment.

Ms. Blum moved for reconsideration, arguing for the first time that the hospital had not served all of its summary judgment materials 28 days prior to the hearing, as required by rule. The trial court denied the motion for reconsideration, finding that Ms. Blum "was adequately alerted to the Defendant's intentions and provided more than adequate time to respond." CP at 14. Ms. Blum appeals.

## ANALYSIS

Ms. Blum, who was represented by counsel below, appeals pro se. It is clear from her briefing on appeal that she has conducted additional investigation and review following the dismissal of her claim by the trial court and she makes new arguments, dealing with matters that were not presented to the trial court when the motion was argued and decided. Our review is limited to the admissible evidence that was presented to the trial court, however. With respect to issues not raised in the trial court, RAP 2.5(a) states the general rule for appellate disposition: appellate courts will not entertain them. *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988).

With that scope of review in mind, we turn to Ms. Blum's arguments that the trial court erred in (1) finding that her expert's affidavit was insufficient, (2) not granting a

5

continuance, (3) disregarding some of her proposed exhibits while relying on others submitted by the hospital, and (4) denying her access to the courts. We address her arguments in turn.

I

Ms. Blum contends the trial court erred in disregarding the expert affidavit of Dr. Palmer as insufficient and conclusory. The declaration established that Dr. Palmer saw and examined Ms. Blum sometime in 2008 for her detached retina and expressed his opinion that the fall she sustained at the hospital the prior year, in August, more likely than not caused the detachment. It provided no information on the doctor's training, experience, or specialty; how or to what extent he had examined her; or any explanation of why he attributed her 2008 retinal detachment to a particular 2007 fall.

A defendant in a medical negligence case may move for summary judgment on the ground the plaintiff lacks competent medical evidence to make out a prima facie case. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989). If it does, the plaintiff must present competent evidence to rebut the defendant's initial showing of the absence of a material issue of fact. *Id.* at 227. The hospital's motion and supporting affidavits shifted the burden to Ms. Blum to produce an affidavit from a qualified expert alleging specific facts supporting a cause of action. *See Guile v. Ballard Cmty. Hosp.*, 70 Wn. App. 18, 25, 851 P.2d 689 (1993).

6

In an action for professional negligence against a hospital, a plaintiff must "prove by a preponderance of the evidence that the defendant . . . failed to exercise that degree of skill, care, and learning possessed at that time by other persons in the same profession, and that as a proximate result of such failure the plaintiff suffered damages." RCW 4.24.290; *Byerly v. Madsen*, 41 Wn. App. 495, 503, 704 P.2d 1236 (1985).

Medical testimony is typically required to demonstrate that the alleged negligence more likely than not caused the injury. *Shellenbarger v. Brigman*, 101 Wn. App. 339, 348, 3 P.3d 211 (2000). The testimony must be "based upon 'a reasonable degree of medical certainty.'" *McLaughlin v. Cooke*, 112 Wn.2d 829, 836, 774 P.2d 1171 (1989). It is not enough that the defendant's conduct "might have" or "possibly did" cause the injury. *Miller v. Staton*, 58 Wn.2d 879, 886, 365 P.2d 333 (1961).

The opinion of an expert that is only a conclusion or that is based on assumptions does not satisfy the summary judgment standard. *John Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 787, 819 P.2d 370 (1991). An expert must back up his or her opinion with specific facts. *Hash v. Children's Orthopedic Hosp. & Med. Ctr.*, 49 Wn. App. 130, 135, 741 P.2d 584 (1987) (citing *United States v. Various Slot Machs. on Guam*, 658 F.2d 697, 700 (9th Cir. 1981)), *aff'd*, 110 Wn.2d 912, 757 P.2d 507 (1988). Unsupported conclusional statements alone are insufficient to prove the existence or nonexistence of issues of fact. *Brown v. Child*, 3 Wn. App. 342, 343, 474 P.2d 908 (1970).

7

Dr. Palmer's affidavit does not meet the requirements of CR 56(e). He offers no explanation of how he arrived at his conclusion that the prior year's fall caused Ms. Blum's retinal detachment nor does it even point to facts on which his conclusion is based. He does not state how he is qualified to express an opinion on causation. The trial court properly deemed his affidavit insufficient.

## II

Ms. Blum next argues that the trial court erred in failing to grant her a continuance of the summary judgment hearing that it was authorized to order by CR 56(f). But Ms. Blum never requested a continuance.

A party faced with a motion for summary judgment may move the court under CR 56(f) to continue the hearing so that it can obtain an affidavit, deposition, or other discovery needed to justify its opposition to the motion. The rule clearly requires a party to demonstrate its need for the continuance by affidavit. Decisions construing the rule have found that the party's affidavit must also set forth the evidence the party seeks, how that evidence will preclude summary judgment, and why additional time is needed. *Durand v. HIMC Corp.*, 151 Wn. App. 818, 828, 214 P.3d 189 (2009); *Briggs v. Nova Servs.*, 135 Wn. App. 955, 961, 147 P.3d 616 (2006).

If a party does not ask for a continuance in the trial court, it cannot raise a claimed need for a continuance as an issue on appeal. *Guile*, 70 Wn. App. at 24-25; RAP 2.5(a).

III

Ms. Blum next raises three evidentiary issues. Some will not be considered as they were not raised below.

She argues, first, that the trial court erred in refusing to consider the unsworn, unauthenticated records of Dr. Sung and Dr. Cancado as creating genuine issues of material fact. The records were unauthenticated. "Authentication is a threshold requirement designed to assure that evidence is what it purports to be." *State v. Payne*, 117 Wn. App. 99, 106, 69 P.3d 889 (2003) (citing 5C KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 900.2, at 175; § 901.2, at 181-82 (4th ed. 1999)). CR 56(e) requires that a trial court base its summary judgment decision on specific facts, properly sworn and authenticated. In the face of the hospital's motion to strike the Sung and Cancado records, Ms. Blum responded with no authority that would enable the court to consider them. They were properly disregarded.

She argues, next, that the trial court should not have admitted some of the evidence offered by the hospital. But she did not object to the hospital's evidence in the trial court. We review evidentiary rulings made by the trial court; "we do not ourselves make evidentiary rulings." *Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*, 139 Wn. App. 743, 756, 162 P.3d 1153 (2007). When no objection or motion to strike is made before entry of summary judgment, a party is deemed to waive any deficiency in the affidavit. *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 352, 588 P.2d 1346

9

(1979). Even if we assume there was a problem with some or all of the hospital's evidence (and we do not suggest that there was) Ms. Blum cannot raise it for the first time on appeal.

IV

Finally, Ms. Blum argues that the trial court erred in granting judgment summarily because the procedure prevented her from developing a case and is contrary to law, manifestly unjust, and contrary to public policy. She relies on *Putman v. Wenatchee Valley Medical Center, PS*, 166 Wn.2d 974, 216 P.3d 374 (2009) for her contention that summary judgment denied her access to the courts. In *Putman*, the court held unconstitutional a statute, RCW 7.70.150, that required the plaintiffs to file a certificate of merit before proceeding to court. 166 Wn.2d at 977. *Putman* held that the certificate of merit requirement unduly burdened the right of access to the courts, but that was because it required parties to present evidence that might be impossible to develop without discovery.

A motion for summary judgment follows commencement of an action, and therefore some opportunity for discovery. CR 56 requires 28 days' notice of the hearing and contains its own continuance provision—CR 56(f)—for any party who can demonstrate why he or she is unable, without further discovery, to oppose the motion. The continuance provision deters parties from moving for summary judgment prematurely and here the hospital did not file for summary judgment until a year after

10

No. 30610-1-III
*Blum v. Our Lady of Lourdes Hosp.*

Ms. Blum's action was commenced. She was not denied her opportunity to develop evidence in support of her claim.

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

_____Siddoway, ACJ_____
Siddoway, A.C.J.

WE CONCUR:

_____Brown, J._____
Brown, J.

_____Kulik, J._____
Kulik, J.

11