[No. 34600. *En Banc.* July 23, 1959.]

HELEN BLAND, *Appellant,* v. KING COUNTY, *Respondent.*[1]

[1]Reported in 342 P. (2d) 599.

*Colvin & Williams,* for appellant.

*Rosling, Williams, Lanza & Kastner (Henry E. Kastner,* of counsel), for respondent.

OTT, J.—October 6, 1954, Lester E. Mylott, a patient in King county's Harborview hospital, was injured when an employee of the hospital permitted him to fall to the floor while he was being moved from his bed to a wheel chair. Six days later, he died.

His wife, Delia Mylott, as administratrix of his estate, commenced this action against the defendant to recover damages on two counts: (1) for pain and suffering sustained by the decedent, and (2) for wrongful death. The complaint alleged that the injury and death occurred as the result of the negligence of an employee of the defendant.

Defendant's answer denied the allegations of negligence, and alleged two affirmative defenses. Plaintiff's reply denied the affirmative matters pleaded.

Upon the issues thus joined, the cause proceeded to trial before a jury. At the close of plaintiff's evidence, the court sustained defendant's challenge to its sufficiency. From the judgment of dismissal, plaintiff appealed.

January 10, 1959, upon stipulation of counsel, this court ordered that Helen Bland, daughter of decedent Lester E. Mylott and appellant Delia Mylott, be substituted as appellant because of the recent demise of her mother.

Appellant contends that the evidence relative to the causal relationship between the decedent's death and the injuries he sustained from the fall, due to the negligence of respondent's agent, was sufficient to submit the question to the jury. Appellant argues that the fractures sustained by decedent as a result of the fall caused shock, which, in

turn, lowered decedent's blood pressure to such an extent that the fall was a contributing cause of the coronary infarct which resulted in his death.

The only testimony relating to the fall being a cause of decedent's death was that of appellant's witness, Dr. Pace, who testified as follows:

"Q. Doctor, can you tell us what would cause shock? A. I assume you mean the external initiating cause? Q. That is correct, Doctor. A. There are many such. Traumatic situations in general, hemorrhage of course is one more common cause. I think for the purposes you have in mind, severe trauma to the body and *very frequently fractures*, in which there is actually extensive breaking of bone, tissue, and pain accompanying. Q. Well, then, a — A. Let me say, of course, there are many other causes of shock, — Q. Would a fracture — fracture would then cause shock? A. A fracture *can* produce shock. Q. Or can produce shock. Can shock then affect the heart? A. Yes, particularly in certain — Well, I suppose you can say as a general term, in any condition, of course it *can*. It deprives — the deprivation of blood supply to the heart muscle, the myocardium itself, as is true of the brain and the kidneys, is probably your foremost immediate concern in shock. In those individuals in which you already have a depleted blood supply to the myocardium you would necessarily be more concerned about the effect of shock on the heart. Q. Doctor, to put it in our terms, would shock, or *is it possible* or *probable* or *likely* that shock could bring on a heart attack to a person who has a weak heart? A. Could we be a little more specific about the term 'weak heart'? Q. Oh, say who has aortic stenosis and a coronary artery disease. A. Yes, it most certainly *can*. . . . shock or any condition which produces a lowered blood pressure level would be considered a *definite threat* to an individual with known coronary artery disease, . . ." (Italics ours.)

In answer to a hypothetical question, Dr. Pace stated:

"Well, I think my opinion, as a matter of opinion, would be, that if a period of ten hours' delay existed from the period of receipt of trauma and medical attention, I think there is a *very excellent possibility* of this being considered a trigger mechanism, or the initiating situation, that *might evolve* in the actual death itself. And to clarify that, I would say simply this, a period of delay and inattention to a condition like a fracture we *can assume the probability* that in a man

of this nature that this *very probably could* cause a drop in blood pressure and that a drop of blood pressure prolonged over this period of time *could be a very excellent probable cause* of initiating the mechanism that resulted in his demise." (Italics ours.)

The test to be applied in considering the sufficiency of the evidence to establish cause of death was announced by this court in *Seattle-Tacoma Shipbuilding Co. v. Department of Labor & Industries*, 26 Wn. (2d) 233, 241, 173 P. (2d) 786 (1946), as follows:

"The general rule, from which this court has never deviated, is stated in 135 A. L. R. 517, as follows:

" 'It appears to be well settled that medical testimony as to the possibility of a causal relation between a given accident or injury and the subsequent death or impaired physical or mental condition of the person injured is not sufficient, standing alone, to establish such relation. By testimony as to possibility is meant testimony in which the witness asserts that the accident or injury "might have," "may have," or "could have" cause, or "possibly did" cause the subsequent physical condition or death or that a given physical condition (or death) "might have," "may have," or "could have" resulted or "possibly did" result from a previous accident or injury—testimony, that is, which is confined to words indicating the possibility or chance of the existence of the causal relation in question and does not include words indicating the probability or likelihood of its existence.'

"In *Anton v. Chicago, M. & St. P. R. Co.*, 92 Wash. 305, 159 Pac. 115, this court expressed its views with respect to such evidence, in the following language:

" 'Taking the opinion of the witness [a medical man] for the appellant, as quoted above, at its full worth, we think it is no more than a statement of a possibility or possibly a probability, more or less remote, that the tuberculosis is a result of the injury. This is not enough. The law demands that verdicts rest upon testimony and not upon conjecture and speculation. There must be some proofs connecting the consequence with the cause relied upon. The testimony, whether direct or circumstantial, must reasonably exclude every hypothesis other than the one relied on.' "

The same test was recently applied in *Sawyer v. Depart-*

*ment of Labor & Industries,* 48 Wn. (2d) 761, 766, 296 P. (2d) 706 (1956).

Dr. Pace testified that the fractures could have produced a decrease in blood pressure, and that the decrease in blood pressure could have been a contributing cause of decedent's death. The doctor's testimony is, as we said of Dr. Benson's testimony in the *Sawyer* case, *supra* [p. 767], "assumption pyramided upon assumption, amounting to mere speculation and conjecture."

■ Applying the rule announced in the cited cases to the facts presently before us, we conclude that any finding by the jury that decedent's fall was a proximate cause of his death would be the result of speculation and conjecture, and that the court properly dismissed appellant's second cause of action.

■ Having determined that appellant's evidence failed to establish that decedent's fall was the cause of his death, it follows that the first cause of action for pain and suffering is abated. RCW 4.20.060; *Boyd v. Sibold,* 7 Wn. (2d) 279, 109 P. (2d) 535 (1941), and cases cited.

For the reasons stated, the judgment is affirmed.

ALL CONCUR.

---

[*En Banc.* April 21, 1960.][2]

PER CURIAM.—Upon a rehearing *En Banc*, a majority of the court adheres to the *En Banc* opinion heretofore filed.

[2]Reported in 351 P. (2d) 153.