[No. 39172.   Department One.   May 9, 1968.]

NEIL B. O'DONOGHUE *et al., Respondents,* v. SUE RIGGS *et al., Appellants.**

*Reported in 440 P.2d 823.

*The Attorney General* and *Burton R. Johnson, Special Assistant,* for appellants.

*Horton & Wilkins,* by *Hugh B. Horton,* for respondents.

WARD, J.†—This is the second appearance in this court of the Helen M. O'Donoghue claim for damages. Her first action was brought against the state of Washington under the tort claims act, RCW 4.92. In that action, she claimed she suffered personal injuries while she was a patient in the Eastern State Hospital at Medical Lake, for which the state of Washington was liable. That action, however, was dismissed by the trial court on account of her failure to file a timely claim against the state as required by the provisions of RCW 4.92, and that disposition of the case was affirmed by this court in *O'Donoghue v. State,* 66 Wn.2d 787, 405 P.2d 258 (1965).

The plaintiff then commenced the present action against Dr. Garrett Heyns, Director of the Department of Institutions, Dr. Harris F. Bunnell, Superintendent of Eastern State Hospital, Laurel V. Nelson, Eastern State Hospital

---

†Judge Ward is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

Administrator, Sue Riggs, a practical nurse at the hospital, and Belle Orr, a hospital attendant.

Mrs. O'Donoghue was admitted as a voluntary patient at Eastern State Hospital on May 10, 1963. She claims that, on the day following her admittance, she was pushed by the defendant, Sue Riggs, who was attempting to force her to take her place in a line of patients going to their evening meal, and that, as a result of being pushed, she fell and sustained a fracture of the femur. For such injury, and for subsequent urinary troubles, claimed to have resulted from the immobilization necessary for the treatment of the leg injury, she sought recovery of damages.

Dr. Heyns was dismissed as a defendant before trial. Dr. Bunnell, Laurel V. Nelson, and Belle Orr were dismissed on their motion at the close of the plaintiff's case, leaving Sue Riggs the sole defendant. The jury returned a verdict against Mrs. Riggs in the sum of $10,000, and this appeal is from the judgment entered thereon. We shall discuss the facts in more detail only as may be necessary for an understanding of the 16 assignments of error raised on this appeal.

■ The defendant assigns error upon the failure of the trial court to dismiss the case on her motion for summary judgment. She claims that the abortive action, which Mrs. O'Donoghue first brought against the state of Washington, constituted an election of remedies, barring her from bringing the subsequent action against the individual defendants. There is no merit in this contention. Mrs. O'Donoghue brought her prior action under the mistaken belief that she had a valid claim against the state. If a party believes he has a claim, but subsequent events prove the claim to be nonexistent, his attempt to assert such claim in court does not constitute an election, barring pursuit of a meritorious claim based on the same facts but against a different party. In such a case, it is immaterial whether the remedy be nonexistent because it develops that the facts are different from what the plaintiff supposed them to be, or whether the law applicable to the facts is found to be other than the

claimant supposed. 25 Am. Jur. 2d *Election of Remedies* § 22 (1966). As we said in *In re Pulver*, 146 Wash. 597, 604, 264 Pac. 406 (1928):

> Invoking a claimed remedy, which is not in law available, is not an election of a remedy precluding thereafter the invoking of a remedy which is in law available. *Roy v. Vaughan*, 100 Wash. 345, 170 Pac. 1019; *Harris v. Northwest Motor Co.*, 116 Wash. 412, 199 Pac. 992; *Warren v. Sheane Auto Co.*, 118 Wash. 213, 203 Pac. 372; *Friend v. Talcott*, 228 U.S. 27.

*See also Spokane Security Fin. Co. v. Crowley Lumber Co.*, 150 Wash. 559, 274 Pac. 102 (1929); *In re Berry's Estate*, 196 Wash. 252, 82 P.2d 549 (1938); *Portland Ass'n of Credit Men, Inc. v. Earley*, 42 Wn.2d 273, 254 P.2d 758 (1953).

The defendant further assigns as error the giving of instruction No. 14, because it contained a statement that one element of damage which the jury might consider, if its verdict was in favor of the plaintiff, was loss of earnings. It is the defendant's position that there was no evidence in the case which would support an award of damages for loss of earnings.

We agree. The plaintiff's own testimony revealed she was both unemployed and unemployable. She testified that for a number of years prior to 1961 she had been employed as records librarian at the Kadlec Methodist Hospital, but suffered two heart attacks, and, as a result, was required to give up her employment in August, 1961. Thereafter, she was hospitalized a number of times and, in 1962, became addicted to narcotic drugs which she had taken in the treatment of her heart condition. Later, psychiatric problems developed. For the treatment of this condition, she entered Eastern State Hospital as a voluntary patient in May, 1962. Thereafter, she returned home but continued to suffer attacks, similar to those which preceded her first admission, of nervousness and depression, accompanied by loss of weight and appetite. On account of such recurrence of symptoms, she re-entered Eastern State Hospital in May, 1963.

■ In *Vangemert v. McCalmon,* 68 Wn.2d 618, 622, 414 P.2d 617 (1966), we said:

We have frequently held, and we adhere to the view, that instructions should not be given on issues which are not supported by the evidence. This applies also to the elements for which damages are to be allowed. *Pakka v. Fitzpatrick,* 53 Wn.2d 356, 333 P.2d 917 (1959); *Vogreg v. Shepard Ambulance Serv. Inc.,* 47 Wn.2d 659, 289 P.2d 350 (1955); *Nelson v. Fairfield,* 40 Wn.2d 496, 244 P.2d 244 (1952).

Even though the medical evidence indicated that plaintiff had a severe injury, we cannot say that, under the facts of this case, the element of loss of earnings was so minimal that it was harmless error to give instruction No. 14. If it could be said definitely that Mrs. O'Donoghue had suffered these extensive injuries as a result of the fall on May 11, 1963, then it might be proper for us to treat this as a harmless error, not reflected in the amount of the verdict. *Vangemert v. McCalmon, supra.* In the instant case, however, a Spokane specialist in radiology, with 30 years' specialization and with an outstanding professional background, testified that, from his examination of the X rays taken of Mrs. O'Donoghue's hip, no conclusion could be reached other than that the fracture predated her admission to the hospital. There was no medical testimony to the contrary. From this testimony, the jury could have concluded that, even if Mrs. O'Donoghue was pushed, and fell as a result, no more than an aggravation of a preexisting injury resulted, and that only a minor part of her injuries was attributable to defendant's act. If that was the jury's reasoning, loss of earnings could be a material element of damage. We are not, therefore, in a position to say, with this element of damage included, that a harmless error was committed in giving instruction No. 14.

The defendant excepted to the failure of the court to give proposed instruction No. 6, reading:

If you find that the fracture of the plaintiff's hip occurred prior to her admission to Eastern State Hospital on May 10, 1963, then your verdict will be for the defendants.

The court did not err in omitting this instruction. This proposed instruction would have been correct only if there was no evidence which would support a finding of aggravation of a preexisting injury as a result of the push and fall.

Mrs. O'Donoghue testified that the act which caused her injury occurred in the following manner.

A. Well, I was protesting about going down stairs because my legs were bothering me, and the nurse told me I had to go, and she pushed me in line, and I fell, and when I fell I grabbed hold of her to pull myself up, and she said "don't pull on me; I can't stand to have anyone pull on me," and after that I don't remember anything more.

In her complaint, Mrs. O'Donoghue claims that these acts, attributable to Mrs. Riggs, constituted negligence. The trial court submitted the case to the jury as an action based on negligence. The defendant claims this was error. She claims that if the acts attributed to her were actionable, they were actionable as a civil action for "assault,"[1] and not for negligence. It was not error for the trial court to submit this case to the jury as a negligence case. Mrs. O'Donoghue's testimony quoted above is the only direct evidence in the case stating the manner in which the incident occurred. Mrs. Riggs denies there was any such incident. If the incident occurred, as the jury had a right to believe, then Mrs. Riggs' conduct would constitute negligence if she unintentionally but carelessly used excessive force in placing Mrs. O'Donoghue in the line of patients going to dinner. Under such circumstances as we have here, the intention with which Mrs. Riggs acted would be the primary question in determining whether her act should be deemed negligent or whether it would constitute battery. In *McLeod v. Grant Cy. School Dist. No. 128,* 42 Wn.2d 316, 319, 255 P.2d 360 (1953), we said:

The tort here charged is negligence. In order to state a cause of action for negligence, it is necessary to allege facts which would warrant a finding that the defendant

---

[1] For the purposes of our discussion, we assume that the defendant is referring to the tort of "battery" even though she calls it assault.

has committed an unintentional breach of a legal duty, and that such breach was a proximate cause of the harm. See *Ullrich v. Columbia & Cowlitz R. Co.*, 189 Wash. 668, 66 P. (2d) 853; *Harvey v. Auto Interurban Co.*, 36 Wn. (2d) 809, 220 P. (2d) 890.

■ An act cannot, however, be considered a battery unless the actor intended to cause a harmful or offensive contact with another person. *Garratt v. Dailey*, 46 Wn.2d 197, 279 P.2d 1091 (1955); Restatement (Second) Torts §§ 18, 20 (1965).[2]

In this case, the trial court could have properly submitted to the jury the alternate theory requested by the defendant and could properly have permitted the jury to determine whether Mrs. Riggs' conduct, if they believed the incident occurred, constituted either negligence or battery.

The defendant assigns error to the court's failure to give her proposed instructions Nos. 5 and 7. Proposed instruction No. 7 reads as follows:

If you find from the evidence that the defendant did not assault the plaintiff, then your verdict shall be for the defendant.

Under the views which we have above expressed, this instruction would be incorrect. Under this instruction, the jury would be required to return a verdict for the defend-

---

[2]We do not wish to be understood as in any manner suggesting that the usual and ordinary definition of a battery applies to all intentional contact between a patient in a mental hospital and an attendant, even though the patient may find the personal contact offensive. One who enters a hospital as a mentally ill person either as a voluntary or involuntary patient, impliedly consents to the use of such force as may be reasonably necessary to the proper care of the patient or for the necessary enforcement of reasonable rules governing the patient's safety and health. RCW 9.11.040(6) states that the use of force toward the person of another is not unlawful: "Whenever used by any person to prevent an idiot, lunatic or insane person from committing an act dangerous to himself or another, or in enforcing necessary restraint for the protection of his person, or his restoration to health, during such period only as shall be necessary to obtain legal authority for the restraint or custody of his person." So, also, the reasonable use of force may be necessary within a mental hospital in the proper care and treatment of a patient and in order to protect him or others from harm.

ant even if they found under the evidence that the plaintiff sustained her injuries as a result of Mrs. Riggs' negligence. Neither do we think the court erred in rejecting defendant's proposed instruction No. 5. It purports to define assault and contains the statement "The basis of this action is assault." It would be improper for the court to give this instruction in this form. Together with instruction No. 5, it would wholly eliminate the negligence theory, which the jury also had a right to consider.

The defendant also assigns error to the court's failure to strike the testimony of Dr. Harold J. Ellner, who was called as a witness by the plaintiff to establish that in July, 1963, while Mrs. O'Donoghue was a patient in the Kadlec Methodist Hospital in Richmond, she was suffering from a condition of urinary retention, and that the proximate cause of such condition was the immobilization required for treatment of her fractured leg. Dr. Ellner's sole examination of the patient took place on July 31, 1963. Plaintiff's counsel asked Dr. Ellner several questions for the purpose of establishing his competence to express an opinion with reasonable medical certainty as to the cause of this condition of urinary retention. The answers elicited from Dr. Ellner, however, completely negatived the doctor's ability to express such an opinion based upon his one visit to the patient. It was the doctor's position that in order to permit him to express an opinion with the required degree of medical certainty, it would have been necessary for him to perform certain diagnostic studies which, in this case, he had had no opportunity to do. In counsel's attempt to lay a foundation for the expression of a medical opinion as to the probable cause of Mrs. O'Donoghue's condition of urinary retention, the record shows the following questions and Dr. Ellner's answers:

Q. Did you subsequently reach an opinion as to the cause of this? A. Not exactly. There were many possibilities; many things that cause urinary retention, but we never did have the opportunity to go into all of the possible causes and to arrive at one. Q. Did you in connection with this reach a conclusion as to the probable cause? A.

No, not exactly a conclusion, but perhaps a few impressions. . . . Q. Can you tell us what you felt was the probable cause of this, doctor? A. Well, it's a difficult question, Mr. Horton. As I mentioned before it takes a certain amount of diagnostic work to come up with even an opinion or an impression, much less an exact diagnosis. . . . Q. And can you tell us what the impression was of the probable cause? A. No, I really can't. . . . There are many neurological and psychological possibilities, as well as actually demonstrated physical possibilities, but I didn't have x-ray evidence of bladder and kidney condition in this case, and we don't have the evidence which is given to you by a cystoscope with which we examine the interior of the bladder, so much of the thoughts I would have had on the subject would be unsubstantiated possibilities.

■ There is nothing in the record to indicate that Dr. Ellner was attempting to be partisan or evasive. The answers elicited by plaintiff's counsel establish that without the diagnostic studies, which were never made, Dr. Ellner was unable, as a result of his one visit to the plaintiff, to state the probable cause of her condition with that degree of medical certainty necessary to give it probative value. When a witness who is called as an expert unequivocally states that the facts which have come to his attention are insufficient to permit him to express an opinion, and it appears to the court that the witness is attempting to be fair and candid in his testimony, then it is error for the court to permit the witness to express an opinion upon the matter under inquiry. In *Kiehn v. Sprague School Dist. No. 8,* 52 Wn.2d 565, 568, 324 P.2d 446 (1958), we said:

The witness stated unequivocally that he was unable to express an opinion as to the speed of the respondents' car based upon skid marks plus damage after collision. Yet, the court permitted the witness to state to the jury that there was nothing at the scene of the accident to indicate excessive speed. The overruling of appellant's objection was, therefore, error.

In *Calder v. Levi,* 168 Md. 260, 265, 177 Atl. 392, 97 A.L.R. 880 (1935), the court said:

However, the witness had stated that it was "almost impossible" to predict the duration of the plaintiff's sick-

ness, and she was, therefore, unable to give a prognosis except in the terms of the possible. It would have been error to permit these questions to be answered, because her previous testimony disclosed that her relevant and material knowledge of this subject had been previously exhausted.

*See also Gribbin v. Fox,* 130 N.J.L. 357, 32 A.2d 853 (1943); *Neel v. Henne,* 30 Wn.2d 24, 190 P.2d 775 (1948); 31 Am. Jur. 2d *Expert and Opinion Evidence* § 36 (1967).

For these reasons, the court should have sustained the defendant's objections to the questions permitting the expression of opinion by the doctor, and should have granted the defendant's motion to strike that portion of the testimony.

Moreover, we believe the opinion Dr. Ellner expressed failed to measure up to that degree of medical certainty or probability which would take it out of the realm of speculation and conjecture necessary to give it probative value. It was Dr. Ellner's expressed opinion that there were three possible or probable causes of the condition or urinary retention: (1) immobility while plaintiff was a patient in the hospital for the treatment of her leg injury, (2) neurological diseases, and (3) psychiatric causes. The doctor refused to eliminate any of these three hypotheses as a probable cause of Mrs. O'Donoghue's urinary retention. He testified:

Q. Well, do you have a belief then, doctor, that would be greater than a 50% of belief of what was the cause of the condition for which you cared for her? . . . A. I would say that it would narrow down to about three possibilities as an opinion, but not substantiated by any scientific . . . . (At this point, Dr. Ellner was interrupted.)

■ The plaintiff relies upon one answer elicited from Dr. Ellner to the effect that, in degrees of percentage, perhaps 50 per cent of Mrs. O'Donoghue's difficulty might be attributed to immobilization. This testimony was insufficient to exclude the other two hypotheses. In *Anton v. Chicago, M. & St. P. Ry.,* 92 Wash. 305, 308, 159 Pac. 115 (1916), in considering medical testimony to the effect that

there could be more than one possible cause for a condition of tuberculosis in a joint, we said:

> The testimony, whether direct or circumstantial, must reasonably exclude every hypothesis other than the one relied on.

The court further said, at 309:

> In such cases, medical expert opinion is but an admeasurement of possibilities, and the court will, upon challenge to the sufficiency of the evidence, consider the whole evidence.

In a case such as this, medical testimony must be relied upon to establish the causal relationship between the liability-producing situation and the claimed physical disability resulting therefrom. The evidence will be deemed insufficient to support the jury's verdict, if it can be said that considering the whole of the medical testimony the jury must resort to speculation or conjecture in determining such causal relationship. In many recent decisions of this court we have held that such determination is deemed based on speculation and conjecture if the medical testimony does not go beyond the expression of an opinion that the physical disability "might have" or "possibly did" result from the hypothesized cause. To remove the issue from the realm of speculation, the medical testimony must at least be sufficiently definite to establish that the act complained of "probably" or "more likely than not" caused the subsequent disability. *Ugolini v. States Marine Lines,* 71 Wn.2d 404, 407, 429 P.2d 213 (1967); *Glazer v. Adams,* 64 Wn.2d 144, 147, 391 P.2d 195 (1964); *Orcutt v. Spokane Cy.,* 58 Wn.2d 846, 853, 364 P.2d 1102 (1961); *Clevenger v. Fonseca,* 55 Wn.2d 25, 32, 345 P.2d 1098 (1959); *Bland v. King Cy.,* 55 Wn.2d 902, 905, 342 P.2d 599 (1959); *Ehman v. Department of Labor & Indus.,* 33 Wn.2d 584, 597, 206 P.2d 787 (1949); *Seattle-Tacoma Shipbuilding Co. v. Department of Labor & Indus.,* 26 Wn.2d 233, 241, 173 P.2d 786 (1946).

In the instant case, we have three hypothesized causes of Mrs. O'Donoghue's urinary retention, and the medical opinion expressed by Dr. Ellner is such that the jury was re-

quired to resort to speculation and conjecture in order to determine which of the three possible causes was, in fact, the actual cause. The defendant's motion to strike the evidence should have been granted.

We have considered all of the 16 assignments of error made by the defendant, but find no error in the record other than those which we have heretofore discussed, and such errors as cannot recur on a retrial in which Mrs. Riggs is the sole defendant. The errors which we find cannot be considered inconsequential or nonprejudicial. The judgment will be reversed and the case remanded for a new trial. The assessment of costs will await the final determination of the action.

FINLEY, C. J., WEAVER, ROSELLINI, and McGOVERN, JJ,. concur.

---

June 19, 1968. Petition for rehearing denied.

*Reported in 440 P.2d 831.