IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CATHLEEN Le CAIRE and RANDALL Le CAIRE, | ) ) ) | No. 31726-9-III |
| Appellants, | ) ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| RODERICK W. TATARYN, and JANE DOE TATARYN, individually and as husband and wife, and RODERICK W. TATARYN, D.D.S., M.S., P.S., a Washington Corporation, dba RODERICK ENDODONICS, | ) ) ) ) ) ) ) ) | |
| Respondents. | ) | |

LAWRENCE-BERREY, J. — Cathleen Le Caire and her husband, Randall Le Caire, appeal the trial court's order dismissing their medical negligence claim against dentist Roderick Tataryn, on summary judgment. Pro se, the Le Caires contend the trial court erred in ruling that they had not met their burden of proof and in refusing to consider certain medical evidence. They also contend their trial counsel improperly withdrew from the case under CR 71. Finding no error, we affirm.

FACTS

The facts are drawn most favorably for Cathleen Le Caire as the nonmoving party under our summary judgment standard of review. On January 21, 2009, Dr. Roderick W. Tataryn, a licensed dentist and endodontist, performed a root canal on Ms. Le Caire's bottom right second molar. He anesthetized the area using Lidocaine 2% for a mandibular block and a buccal infiltration. This procedure involves a rinse of the pulp chamber of the tooth with anesthetic solution, as opposed to a "block" procedure, which is an injection of anesthetic. Clerk's Papers (CP) at 132-33. Despite the anesthetic, Ms. Le Caire experienced severe pain during the procedure. The day after the procedure, Ms. Le Caire continued to experience severe pain as well as numbness of her tongue. According to Ms. Le Caire, she continues to experience right-sided jaw pain and numbness of her tongue.

The Le Caires subsequently filed a medical negligence lawsuit against Dr. Tataryn, alleging that he committed malpractice by failing to meet the standard of care under chapter 7.70 RCW. Specifically, she alleged that he violated the standard of care by injecting an anesthetic combination of 3 cubic centimeters (cc) of 4% Septocaine with 1:100,000 epinephrine in a lower jaw block near the inferior alveolar nerve and lingual nerve, which carries the "medically known risk of nerve injury resulting in permanent

tongue numbness and constant pain." CP at 30. Ms. Le Caire maintained her injuries were the proximate result of Dr. Tataryn's violation of the standard of care and that she would not have consented to the procedure if he had informed her of the material risks.

Dr. Tataryn moved for summary judgment dismissal, contending the Le Caires' claims failed as a matter of law because they failed to provide expert testimony establishing Dr. Tataryn violated the required standard of care and that Ms. Le Caire sustained any injury as a proximate cause of the alleged negligence.

The Le Caires responded to the summary judgment motion with a declaration from Dr. Darlene Chan, a dentist and board certified oral surgeon. She concluded, "A dentist, exhibiting the degree of care, skill and learning, practicing in the State of Washington would not have injected 3 cc of 4% Septocaine with 1:100,000 epinephrine for an anesthetic block of the Inferior alveolar nerve when successful pain control can be achieved with other local anesthetics that do not carry increased risk of nerve injury." CP at 9. She explained that the combination of Septocaine and epinephrine used in a lower jaw block near the inferior alveolar nerve carries the medically known risk of "nerve injury resulting in permanent numbness and constant pain." CP at 9. In a supplemental declaration, Dr. Chan stated, "The most plausible medical explanation for the symptoms the Plaintiff is experiencing is from injecting Septocaine 4% 1:100,000 as

an anesthetic block." CP at 25.

The parties later discovered that Dr. Chan had based her opinion on an incorrect interpretation of Dr. Tataryn's chart notes. In his reply to Dr. Chan's declaration, Dr. Tataryn pointed out that he did not use a nerve block to anesthetize the area and did not use the amounts of Septocaine specified by Dr. Chan. He stated, "Dr. Chan's Declaration repeatedly states that I injected 3 cc's of Septocaine as a mandibular anesthetic block. In that regard she is mistaken in two respects: (1) 3 cc's is not the amount of Septocaine that was used during Ms. Le Caire's treatment, (2) in any case, I did not use Septocaine as a block anesthetic during my treatment of Ms. Le Caire." CP at 132. He explained that his measurements were in "carpules," not cubic centimeters as suggested by Dr. Chan.

He also explained that he used a buccal infiltration, not a block; and that the buccal infiltration of one carpule of Septocaine did not involve injections anywhere near the inferior alveolar or lingual nerves. According to Dr. Tataryn, there is no "peer-reviewed literature suggesting that an intrapulpal injection of Septocaine can cause nerve damage of any kind." CP at 133. He noted, "Dr. Chan's Declaration fails to identify any material risks to the anesthetic procedures that were actually provided by Dr. Tataryn involving the use of Septocaine. Absent the identification of some relevant, material risk associated with the actual care provided to Ms. Le Caire . . . plaintiffs' claim fails as a matter of law.

4

[T]here is no admissible evidence supplied in support of the other elements." CP at 140.

On September 21, 2012, the court denied Dr. Tataryn's motion for summary judgment without prejudice based on Dr. Chan's misunderstanding of the facts of the anesthetic procedure. The court granted the Le Caires additional time to investigate their claims.

On February 7, 2013, Dr. Tataryn renewed his motion for summary judgment, noting the Le Caires had failed to come forward with expert testimony that he deviated from the required standard of care and that there was a causal relationship between the anesthetic procedure and Ms. Le Caire's injury. The matter was scheduled for a hearing on March 15, 2013.

On March 8, 2013, the Le Caires' attorney, Robb Grangroth, withdrew, citing disagreements between himself and the Le Caires. On March 15, the court continued the hearing to March 29 to give the Le Caires time to consult with counsel and file a response. On March 29, the Le Caires, pro se, requested additional time. On April 5, the court gave the Le Caires until May 1 to file a declaration of an expert witness addressing the issues in Dr. Tataryn's motion for summary judgment.

The Le Caires did not file a declaration of a medical expert by the deadline. However, on May 8, they attempted to submit additional evidence in support of their

5

claims. Dr. Tataryn asked the court to strike the submissions as "hearsay, tardy, and non-responsive to the noted presentment." CP at 185.

At the hearing on May 10, the court granted summary judgment dismissal of the Le Caires' claims, finding there was no genuine issue of material fact. It did not consider their May 8 submissions.

Pro se, the Le Caires now appeal the order dismissing their complaint on summary judgment.

## ANALYSIS

*Summary Judgment Dismissal.* The issue is whether the trial court erred in granting summary judgment in favor of Dr. Tataryn. Pro se, the Le Caires contend the trial court erred in concluding that they failed to meet their burden of proof. They assert they provided sufficient medical evidence that Dr. Tataryn failed to meet the standard of care and to prove causation.

As a threshold matter, we note that the Le Caires' opening and reply briefs do not contain references to the record or citations to legal authority regarding this issue. "[P]ro se litigants are bound by the same rules of procedure and substantive law as attorneys." *Westberg v. All-Purpose Structures, Inc.*, 86 Wn. App. 405, 411, 936 P.2d 1175 (1997); *see also* RAP 10.3(a)(6) (providing that the appellate brief should contain "citations to

legal authority and references to relevant parts of the record"). Appellate courts need not address arguments that are not supported by cited authorities or meaningful discussion. *Regan v. McLachlan*, 163 Wn. App. 171, 178, 257 P.3d 1122 (2011). However, despite the inadequacy of the briefing, we exercise our discretion to reach the merits of the issue because the nature of the Le Caires' challenge is clear and the record is adequate for our review. *State v. Breitung*, 155 Wn. App. 606, 619, 230 P.3d 614 (2010), *aff'd*, 173 Wn.2d 393, 267 P.3d 1012 (2011).

We review a grant of summary judgment de novo and engage in the same inquiry as the trial court. *Trimble v. Wash. State Univ.*, 140 Wn.2d 88, 92, 993 P.2d 259 (2000). We view the evidence in a light most favorable to the nonmoving party and sustain summary judgment if no genuine issue of material fact exists. CR 56(c); *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990).

The court may grant summary judgment where the nonmoving party has failed to prove an essential element of the claim. *Hines v. Data Line Sys., Inc.*, 114 Wn.2d 127, 148, 787 P.2d 8 (1990). Medical negligence elements are "duty, breach, causation, and damages." *Colwell v. Holy Family Hosp.*, 104 Wn. App. 606, 611, 15 P.3d 210 (2001). Specifically, the plaintiff must prove the "injury resulted from the failure of the health care provider to follow the accepted standard of care [and] [s]uch failure was a proximate

7

cause of the injury complained of." RCW 7.70.040.[1] If a defendant moves for summary judgment based on the absence of competent medical evidence to establish a prima facie case, the burden shifts to the plaintiff to produce testimony from a qualified expert witness alleging specific facts establishing a cause of action. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225-26, 770 P.2d 182 (1989).

In Washington, medical testimony must establish a causal link between the liability-producing situation and the resulting injury to a reasonable degree of medical certainty. *O'Donoghue v. Riggs*, 73 Wn.2d 814, 824, 440 P.2d 823 (1968). The medical testimony must be at least sufficiently definite to establish that the act complained of "probably" or "more likely than not" caused the subsequent disability. *Id.* The evidence establishing proximate cause must rise above speculation, conjecture, or mere possibility. *Reese v. Stroh*, 128 Wn.2d 300, 309, 907 P.2d 282 (1995).

---

[1] RCW 7.70.040 provides in full:
The following shall be necessary elements of proof that injury resulted from the failure of the health care provider to follow the accepted standard of care:
  (1) The health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances; [and]
  (2) Such failure was a proximate cause of the injury complained of.

The Le Caires claim they satisfied the burden of proof, pointing to their May 8, 2013 submissions of doctors' notes as proof of causation. However, the Le Caires overlook the fact that none of these doctors addressed the standard of care or causation. For example, Ahmed Raslan, MD, evaluated Ms. Le Caire on May 2, 2013, for right-sided facial pain. He noted her "[p]ain is sharp but not electric and varies in intensity but never goes away." CP at 53. He also noted that Ms. Le Caire had been evaluated by many specialists with varying diagnoses, including trigeminal neuralgia and temporomandibular joint (TMJ) dysfunction. John Demakas, MD, who also evaluated Ms. Le Caire, noted that a brain magnetic resonance imaging (MRI) did not "demonstrate any significant abnormalities around the trigeminal nerve on the right side." CP at 106. He recommended an evaluation by Dr. Adam Hebb at the University of Washington Department of Neurosurgery. Dr. Hebb apparently evaluated Ms. Le Caire, but nothing in the record shows that he addressed the standard of care or causation.

In sum, none of the evidence cited by the Le Caires states that Dr. Tataryn violated the requisite standard of care or that the anesthetic procedure was the proximate cause of Ms. Le Caire's injuries. Because they failed to make a prima facie case concerning essential elements of their medical negligence claim, summary judgment was properly granted.

9

In the absence of expert testimony on the issues of the standard of care and causation, the trial court properly dismissed the Le Caires' medical negligence claim on summary judgment.

*Court's Refusal to Consider Diagnosis.* Next, the Le Caires contend that the trial court erred in refusing to consider Dr. Leon Assael's diagnosis. They contend that under ER 702, it would have helped the trier of fact understand the evidence and issues in the case. Our ability to address this issue is compromised by the Le Caires' inadequate briefing on the issue, particularly their failure to reference relevant parts of the record.

However, even if we address the issue, their argument fails. The court apparently refused to consider Dr. Assael's notes/diagnosis because the Le Caires submitted this evidence after the May 1, 2013 deadline for filing a declaration from a medical expert. In any event, the Le Caires fail to identify how Dr. Assael's diagnosis supports the elements of a medical negligence claim. The record shows that Ms. Le Caire was evaluated for right facial pain and right tongue numbness by Dr. Assael, DMD, at Oregon Health and Science University on March 13, 2012. The assessment from that visit states: "Cathleen Mae Lecaire is a 51 y.o. woman with right lingual injection nerve injury and trigeminal neuropathy. Lingual paresthesia represents Sunderland class 2-3. Appears that right auriculotemporal nerve could be related to the distal TG neuropathy." CP at 62. Dr.

10

Assael's notes do not indicate that he reviewed Dr. Tataryn's anesthetic procedure, addressed the appropriate standard of care, or addressed whether the particular anesthetic process used by Dr. Tataryn was the proximate cause of Ms. Le Caire's injury. The Le Caires have established an injury, but an injury does not constitute medical negligence.

The trial court did not err in refusing to consider Dr. Assael's diagnosis.

*Attorney's Withdrawal.* Finally, the Le Caires contend that their trial attorney, Robb Grangroth, misled them about the procedure under CR 71, the attorney withdrawal rule. They claim he told them it would be better to fire him rather than withdraw and that he failed to advise them that under CR 71(d) "had he withdrawn, he would have to provide substitute representation." Appellants' Br. at 7. They claim they would not have fired him if they had known the requirements of the rule.

Their argument fails. Regardless of whether the Le Caires terminated Mr. Grangroth or he withdrew, CR 71(d) does not require the withdrawing attorney to provide substitute counsel. CR 71(d) provides, in part, "Except as provided in section (b), an attorney may withdraw if a new attorney is substituted by filing and serving a Notice of Withdrawal and Substitution." This provision is clear on its face: it applies to the situation where an attorney replaces withdrawing counsel. This was not the situation here.

No. 31726-9-III
*Le Caire v. Tataryn*

Mr. Grangroth's withdrawal from the case comported with the requirements of CR 71 for withdrawal by notice. CR 71(c) requires a withdrawing attorney to provide notice to clients, all other parties, and the court. If the client objects to an attorney's withdrawal, withdrawal may be obtained only by court order. CR 71(c)(4). The Le Caires do not allege that they did not receive notice and there is no record that they objected to Mr. Grangroth's withdrawal. The court gave them multiple opportunities to obtain new counsel and deferred granting Dr. Tataryn's motion for summary judgment for that purpose.

We affirm the summary judgment dismissal of the complaint.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____     _____
Brown, J.                                      Siddoway, C.J.

12