COURT OF APPEALS DIV. 1
2018 JUL -9 AM 9: 53



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| JUAN PABLO RIOS PEREZ, a minor child, by and through his parents, RICARDO RIOS VILLA and MONICA PEREZ, and individually, <br><br> Appellants, <br><br> v. <br><br> GRACE JUNG, DDS, individually and the marital community with JOHN DOE JUNG and CHUNG-LONG HWANG, DDS, PS, d/b/a CHILDREN'S DENTAL CARE, <br><br> Respondents. | No. 76593-1-I <br><br><br><br><br><br><br> UNPUBLISHED OPINION <br><br> FILED: July 9, 2018 |

VERELLEN, J. — Juan Pablo Rios Perez appeals the trial court's summary judgment dismissing his dental malpractice claim against Dr. Grace Jung and the other defendants. Perez contends his experts' testimony on causation was sufficient to withstand summary judgment. Viewing the evidence in the light most favorable to Perez, we agree that he presented competent evidence that Dr. Jung's breach of the standard of care caused his injuries and, therefore, reverse and remand for further proceedings.

FACTS

On October 22, 2013, Dr. Jung performed multiple dental procedures on seven-year-old Perez. Dr. Jung was employed by Dr. Chung-Long Hwang DDS, PS, a corporation doing business under the name of Children's Dental Care. While Perez was under a general anesthetic, Dr. Jung administered a local anesthetic by making at least four injections into different areas of Perez's mouth.

Later that evening, Perez went to the hospital because he experienced swelling in his right eye. Three days later, Perez complained of "severe vision loss" and "no light perception" to Dr. Avery Weiss, an ophthalmologist at Seattle Children's Hospital, who observed that "all the extraocular muscles were swollen."[1]

When Perez returned to Seattle Children's Hospital on November 25, Dr. Weiss noted that his vision in his right eye was still poor. Dr. Weiss performed an optical coherence tomography (OCT) test and discovered "numerous particles within the choroid of the right eye."[2] Dr. Weiss determined that the particles in the "choroid and all layers of the retina" caused Perez to "irreversibly" lose the vision in his right eye.[3]

Perez and his parents sued Dr. Jung, alleging Perez "suffered blindness in his right eye as a result of his dental treatment."[4] Perez alleged lack of informed consent, medical negligence under chapter 7.70 RCW, res ipsa loquitur, and

---

[1] Clerk's Papers (CP) at 120.

[2] CP at 121.

[3] Id.

[4] CP at 42.

common law negligence. Perez later added Chung-Long Hwang, DDS, PS, d/b/a Children's Dental Care, as a defendant.

Dr. Jung moved for summary judgment, arguing Perez's causation theory was not supported by competent expert testimony. In response, Perez filed a declaration of Dr. Olivia Palmer, an experienced pediatric dentist who has taught local anesthesia in medical school. Dr. Palmer opined that Dr. Jung's negligent administration of local anesthetic caused Perez's blindness. Perez's attorney also filed his declaration, attaching excerpts from Dr. Weiss's deposition testimony, as well as his chart notes. In reply to this evidence, Dr. Jung argued that the causation opinions of Dr. Palmer and Dr. Weiss were inadmissible and, therefore, insufficient to prevent summary judgment. The trial court denied Dr. Jung's motion for summary judgment except as to the informed consent claim, which it dismissed.

Dr. Jung then moved for reconsideration under CR 59(a)(7)-(9), arguing that the trial court erred as a matter of law by allowing a common law negligence claim to proceed in a case arising out of health care and by refusing to dismiss the dental malpractice claim in the absence of sufficient admissible expert testimony on the essential element of proximate cause. Specifically, Dr. Jung argued that Dr. Weiss's causation opinion was speculative because he did not testify to a reasonable degree of medical certainty that Dr. Jung's actions caused Perez's injuries and that his chart notes were inadmissible, unauthenticated, and hearsay. Additionally, Dr. Jung argued that Dr. Palmer's testimony on causation was insufficient because she lacked expertise in the area of ophthalmology.

3

Perez acknowledged that he did not intend to state a separate cause of action for common law negligence and submitted a first declaration from Dr. Weiss and a second declaration from Dr. Palmer. In her reply, Dr. Jung argued that the new declarations should be stricken because they were untimely and did not qualify as newly discovered evidence.

The trial court considered the new materials and granted Dr. Jung's motion for reconsideration, dismissing Perez's remaining claims with prejudice.[5]

Perez appeals.

## ANALYSIS

Perez argues that the medical evidence from Dr. Palmer and Dr. Weiss was sufficient to survive summary judgment on his medical malpractice claim. We agree.

Summary judgment is proper when the pleadings, depositions, and admissions in the record, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[6] The purpose of summary judgment is to avoid an unnecessary trial where no genuine issue as to a material fact exists.[7] A genuine issue of material fact exists if reasonable minds could differ about the facts controlling the outcome of the

---

[5] The trial court previously approved the parties' agreement narrowing the claims against Dr. Hwang to vicarious liability. Therefore, the result of the order granting reconsideration and dismissal to Dr. Jung was to dismiss the only remaining claims against Dr. Hwang.

[6] CR 56(c); Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

[7] Id. at 225-26.

4

lawsuit.[8] We review an order granting summary judgment de novo, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party.[9]

In the medical malpractice setting, summary judgment is proper where the plaintiff does not present competent medical evidence to establish a prima facie case.[10] The elements of a medical negligence claim are duty, breach, causation, and damages.[11]

"Expert medical testimony is generally required to establish the standard of care and to prove causation in a medical negligence action."[12] Competent medical expert testimony "must be based on facts in the case, not speculation or conjecture."[13] It also must be based on a reasonable degree of medical certainty, and sufficient to establish that the alleged injury-producing situation "probably" or "more likely than not" caused the subsequent condition.[14] According to the Washington Supreme Court:

> such [a] determination is deemed based on speculation and conjecture
> if the medical testimony does not go beyond the expression of an
> opinion that the physical disability "might have" or "possibly did" result

---

[8] Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

[9] Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).

[10] Young, 112 Wn.2d at 225.

[11] Rounds v. Nellcor Puritan Bennett, Inc., 147 Wn. App. 155, 162, 194 P.3d 274 (2008) (quoting Colwell v. Holy Family Hosp., 104 Wn. App. 606, 611, 15 P.3d 210 (2001)).

[12] Davies v. Holy Family Hosp., 144 Wn. App. 483, 492, 183 P.3d 283 (2008).

[13] Rounds, 147 Wn. App. at 163 (quoting Seybold v. Neu, 105 Wn. App. 666, 676, 19 P.3d 1068 (2001)).

[14] Id. (quoting Merriman v. Toothaker, 9 Wn. App. 810, 814, 515 P.2d 509 (1973)).

from the hypothesized cause. To remove the issue from the realm of speculation, the medical testimony must at least be sufficiently definite to establish that the act complained of "probably" or "more likely than not" caused the subsequent disability.[15]

Here, Dr. Weiss's declaration states that the chart notes accurately reflect his "opinion with respect to the probable cause" of Perez's blindness, which according to those notes was "particulate matter within the chorioid and retina of the right eye."[16] Taken in the light most favorable to Perez, this is competent medical testimony that the particles in Perez's eye resulted in his blindness.

The next question is whether there is a genuine issue of material fact that Dr. Jung's negligent actions caused those particles to enter Perez's eye. Viewing Dr. Palmer's declaration in the light most favorable to Perez, the answer is yes.

During her deposition, Dr. Palmer explained that local anesthetics for dental injections have preservatives in them to keep the anesthetic fresh and that these preservatives were "likely" the particles observed by Dr. Weiss.[17] In her first declaration and her deposition, she also explained that, based on medical literature, there are two ways the particles can get into a patient's intra-arterial circulation: through direct injection of local anesthetic under pressure to the arterial circulation or through diffusion. She stated that the local anesthetic involved in diffusion based injuries is usually articaine because it has a much higher rate of diffusing through the bone than lidocaine does. But, in this case, the local anesthetic used was lidocaine

---

[15] O'Donoghue v. Riggs, 73 Wn.2d 814, 824, 440 P.2d 823 (1968).

[16] CP at 297, 320.

[17] CP at 147-48.

6

HCL with epinephrine, which does not diffuse easily. For these reasons, she opined that "injury by diffusion in this case is much less likely than injury by injection into the intra-arterial circulation."[18] As a result, she concluded that the "probable" cause of Perez's blindness was Dr. Jung's negligent injection of local anesthetic into his arterial circulation during the dental procedure.[19]

Dr. Palmer's declaration also explains the standard of care for administering local anesthetic in dental cases and how Dr. Jung's actions violated that standard. First, she explained that the standard of care requires that a dentist take precautions to ensure local anesthetic is not inadvertently injected into the vascular circulation. One such precaution required by the standard of care is to aspirate at least two times for each insertion of the needle to ensure that no blood is drawn and reassure the dentist that she is not in the vascular circulation. In order to get a return of blood on aspiration, the dentist must use a needle that is likely to achieve blood draw on aspiration. Citing authoritative literature, Dr. Palmer explained that 100 percent positive aspirations are achieved from blood vessels using 25 gauge needles, 87 percent positive aspirations are achieved from using smaller 27 gauge needles, and only 2 percent positive aspirations are achieved from using even smaller 30 gauge needles.

In this case, Dr. Jung used a 30 gauge needle to aspirate only once, and did so only after first injecting some anesthetic. According to Dr. Palmer, Dr. Jung

---

[18] CP at 171.
[19] CP at 170.

7

violated the standard of care in three ways. First, because Perez was under general anesthesia before the injections, there was no need to use a 30 gauge needle to inject the local anesthetic, and using a larger needle would have had a much higher chance of positive aspiration. Second, injecting the local anesthetic before aspiration meant that Dr. Jung injected it before determining whether or not the needle was in the vascular circulation. Third, failing to aspirate at least two times in different planes for each insertion created a circumstance where the needle could have been in the vascular circulation without Dr. Jung being aware of that fact. Based on the above analysis, Dr. Palmer concluded:

> Given the blood circulation in the involved area and the right eye blindness as well as the local anesthetic involved, which was lidocaine HCL with epinephrine, it is *probable* Dr. Jung injected local anesthetic into the arterial circulation, resulting in an ischemic event that cut off blood supply to certain vessels and nerves, resulting in right eye blindness.[20]

Dr. Palmer's testimony that it was probable that Dr. Jung's actions caused Perez's injuries satisfies the reasonable degree of medical certainty requirement,[21] and summary judgment was not proper.

Dr. Jung argues that Dr. Palmer's conclusions are not based on a reasonable degree of medical certainty because she did not exclude all other potential sources of particles in the eye. But this is not the legal standard required. Dr. Palmer explained the likely source of the particles and, given that Perez's blindness occurred soon after the dental procedure, it was not improper or speculative reverse engineering to

---

[20] CP at 170 (emphasis added).
[21] See Rounds, 147 Wn. App. at 163; O'Donoghue, 73 Wn.2d at 824.

analyze and evaluate any connection between the blindness and the dental procedure. Notably, none of the defense experts offered an alternative origin of the particles that caused the blindness.

Dr. Jung also argues that Dr. Palmer's testimony as to causation does not create a genuine issue of material fact because there was no evidence that she was qualified to opine on the cause of Perez's blindness. But Dr. Palmer relied on Dr. Weiss's diagnosis that particles in the choroid caused the blindness.[22] Her expert testimony explained how such particles might enter the arterial circulation during a dental procedure. Given her extensive professional experience as a pediatric dentist, as evidenced by her curriculum vitae attached as an exhibit to her first declaration, Dr. Palmer's opinion is well within her field of expertise.

Dr. Hwang takes issue with Dr. Palmer's statements in her second declaration that it was probable Dr. Jung injected local anesthetic into the arterial circulation "rapidly and under pressure."[23] Although not included in her first declaration,[24] these statements, taken in the light most favorable to Perez, involved Dr. Palmer's determination that diffusion was less likely than injection into the arterial circulation. They do not appear to describe a direct connection between the force or speed of Dr.

---

[22] See Driggs v. Howlett, 193 Wn. App. 875, 900, 371 P.3d 61 (2016) ("No rule precludes a party from relying on one expert witness for a portion of needed evidence and another expert witness for another segment of required testimony."), review denied, 186 Wn.2d 1007 (2016).

[23] CP at 324.

[24] Dr. Jung argues that the trial court did not consider Dr. Palmer's second declaration on reconsideration, but the court order granting reconsideration recites that it was reviewed by the court. CP at 347.

Jung's negligent injection and the resulting blindness. And even assuming that they do, the inclusion of more detail regarding her opinion on causation does not render obsolete her broader opinion on causation in the first declaration, especially where the second declaration did not materially alter the first and the two declarations are not inherently contradictory.[25] Dr. Hwang provides no legal authority that we must discard the initial declaration merely because the second contains more detail.[26] Therefore, because Dr. Palmer's opinion on causation in her first declaration was sufficient to withstand summary judgment, her inclusion of more detail in her second declaration does not require summary judgment dismissal of Perez's negligence claim.

Dr. Jung and Dr. Hwang also argue that Dr. Weiss's testimony as to causation was speculative and therefore not admissible. While it is true that Dr. Weiss did not testify to a reasonable medical certainty as to the specific procedures that Dr. Jung performed on Perez, his testimony as the treating ophthalmologist that the blindness was caused by particles in the choroid and retina was admissible. Because his declaration states that his chart notes accurately reflect his opinion that particulate

---

[25] See Safeco Ins. Co. v. McGrath, 63 Wn. App. 170, 175, 817 P.2d 861 (1991) (if a subsequent affidavit explains previously given testimony, whether the explanation is plausible is an issue to be determined by the trier of fact); Taylor v. Bell, 185 Wn. App. 270, 294, 340 P.3d 951 (2014) (the finder of fact should decide whether a witness's subsequent sworn testimony that explains a previous affidavit statement and is not contradictory to that statement is plausible).

[26] Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (arguments that are not supported by any citation of authority need not be considered).

matter was the "probable" cause of Perez's blindness, his declaration was admissible.

Finally, Dr. Jung argues that Dr. Weiss' chart notes do not create an issue of fact because they lack a proper foundation and contain hearsay. But Dr. Weiss submitted a declaration on reconsideration that included both the chart notes and a statement that those notes accurately reflected his findings on examination.[27] As Dr. Jung acknowledged in her briefing, CR 59 does not prohibit new or additional materials on reconsideration, so this declaration was properly before the court. Furthermore, our conclusion that summary judgment was improper does not rely upon Dr. Weiss' opinion in the chart notes that Dr. Jung negligently administered the local anesthetic. Rather, the element of causation is met through Dr. Palmer's testimony explaining the source of the particles that Dr. Weiss opined caused the blindness.[28] For these reasons, Dr. Jung's argument is not persuasive.

Perez also argues, alternatively, that summary judgment was improper because the doctrine of res ipsa loquitur can establish causation. But given our conclusion that Dr. Palmer's expert opinion established a genuine issue of material fact as to causation, we need not address whether Perez's negligence claim could also survive under res ipsa loquitur.[29]

---

[27] CP at 297.

[28] See Driggs, 193 Wn. App. at 900 ("One expert may rely on the opinions of another expert when formulating opinions.").

[29] We note that the res ipsa inference of negligence requires evidence that the injury-causing event, here the presence of particles in the eye, does not ordinarily occur absent negligence. See Horner v. Northern Pac. Beneficial Ass'n Hosps., Inc., 62 Wn.2d 351, 360-61, 382 P.2d 518 (1963) (esoteric medical evidence leaves the

11

Viewing the evidence in a light most favorable to Perez, Dr. Palmer's declaration establishes an opinion to a reasonable degree of medical certainty that Dr. Jung's negligent injection of local anesthesia gave rise to particles in his eye. And, Dr. Weiss' declaration establishes that those particles caused Perez's subsequent blindness. The fact finder should be the one to weigh the strength of Dr. Palmer and Dr. Weiss's opinions and, therefore, summary judgment was not proper.

We reverse and remand for further proceedings.

WE CONCUR:

---

inference of negligence where experts testified a paralyzed shoulder following hysterectomy surgery was of traumatic origin while under anesthesia, caused by positioning, movement, or pressure applied to patient). It appears that the testimony here, that blindness does not ordinarily occur following dental procedures and that properly administered local anesthesia does not ordinarily lead to blindness, is not esoteric medical evidence establishing that the injury-causing particles in the eye do not ordinarily occur absent negligence.